**TED'S TIRE SERVICE INC.**

v.

**CHEVRON U. S. A. INC.**

Civ. No. H-78-688.

United States District Court,
D. Connecticut.

May 1, 1979.

Ivar A. Jozus, Jozus & Milardo, Middletown, Conn., for plaintiff.

Richard M. Reynolds, Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

The defendant has moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), on the ground that the Court lacks jurisdiction over the subject matter of the complaint. The Court finds that the complaint has been properly removed to the federal court from the state court, and accordingly denies the defendant's motion to dismiss.

### Statement of Facts

This action was commenced by the plaintiff in the Connecticut Superior Court on November 22, 1978. The complaint alleges that on March 1, 1975 the plaintiff executed a franchise agreement with the defendant, which gave the plaintiff a license to market Chevron petroleum and related automotive products for a period of three years, ending on February 28, 1978. When the agreement expired, the complaint alleges, the defendant refused to renew the franchise, except on unreasonable terms, without good cause, without proper notice and without compensation to the plaintiff, all of which is said to be in violation of Conn.Gen.Stat. § 42–133j.

On December 18, 1978 the defendant removed the suit to this Court, on the grounds that the action could have originally been brought in this Court either as a diversity action or pursuant to the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq.

### Discussion of the Law

Effective June 19, 1978 Congress enacted the PMPA in order to protect the franchised retailers of gasoline in their relationships with their franchisors. In an attempt to establish a uniform set of rules to govern franchise relationships throughout the country, the Act provides that no state may adopt, enforce, or continue in effect "any provision of any law or regulation . . . unless such provision of such law or regulation is the same as the applicable provision of this subchapter." 15 U.S.C. § 2806. The defendant argues that the Connecticut statute differs from the federal act in several respects and that therefore this Court lacks jurisdiction to hear this case.

The complaint does not make explicit the precise date on which the defendant decided not to renew the franchise. However, inasmuch as the complaint alleges that the franchise agreement expired on February 28, 1978, it would appear that the failure to renew occurred no later than that date. If that is so, then the nonrenewal occurred prior to the effective date of the PMPA, which was June 19, 1978. The defendant argues that the PMPA is nevertheless applicable, pointing to the language of § 2802(a)(2) which states the general rule that a franchisor may not fail to renew a franchise except for certain specified causes, "without regard to the date on which the relevant franchise was entered into or renewed."

While the issue is one of first impression,[1] the most logical reading of the PMPA is that it is applicable only to a nonrenewal of a franchise which occurs after its effective date. The complete text of 15 U.S.C. § 2802(a) reads:

---

[1] The only reported cases which have dealt with the PMPA were concerned mainly with the standards for issuance of a preliminary injunction under the Act. *Saad v. Shell Oil Co.*, 460 F.Supp. 114 (E.D.Mich.1978); *Frisard v. Texaco Inc.*, 460 F.Supp. 1094 (E.D.La.1978).

"(a) Except as provided in subsection (b) of this section and section 2803 of this title, no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may—

(1) terminate any franchise (entered into or renewed on or after June 19, 1978) prior to the conclusion of the term, or the expiration date, stated in the franchise; or

(2) fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed)."

Petroleum franchisors would be justifiably outraged, if the courts were to read into this language a Congressional intent to subject franchisors to a civil damage suit for failing to comply with a statute before it became effective. Rather, § 2802(a) creates a distinction between termination and nonrenewal in terms of the date the franchise agreement is *executed*, not the date of nonrenewal or termination. The Act applies to *terminations* only where the franchise agreement is entered into after the effective date of the Act, but it applies to *nonrenewals* regardless of when the franchise agreement is executed. However, the Act does not apply to either terminations or nonrenewals which occur prior to the effective date of the Act. Therefore, if the nonrenewal in the present case occurred before June 19, 1978, the PMPA is by its terms inapplicable and the Connecticut statute governs the franchise agreement. Since there is diversity of citizenship and there is more than $10,000 in controversy, this Court would have had original jurisdiction, pursuant to 28 U.S.C. § 1332. Consequently, the action was properly removed to this Court. 28 U.S.C. § 1441.

■ In the event that it develops that the nonrenewal occurred subsequent to June 19, 1978, the Connecticut act would still be applicable, but it would have to be construed consistently with the PMPA. The federal Act does not preempt all state laws regulating petroleum franchises; rather it merely supplants those provisions which are different from the PMPA. The language of the federal Act prohibiting states from enforcing "any provision of any law" which is different from the PMPA, 15 U.S.C. § 2806(a), manifests a Congressional intent to treat state laws which govern petroleum franchises as severable. Therefore, even if the franchise nonrenewal in the instant case occurred after the effective date of the PMPA, the plaintiff could maintain a civil action for violation of Conn.Gen. Stat. § 42–133j; however, the Court would not enforce any provisions which are different from those of the PMPA.

■ Furthermore, the allegations of the complaint would appear to charge the kinds of activity, which would constitute a violation of the PMPA, if the nonrenewal occurred after June 19, 1978. It is true, as the defendant argues, that the removal jurisdiction of the federal courts is derivative in nature. 1A Moore's Federal Practice, ¶ 0.157[3], at 46–47 (2d ed. 1974). As a consequence, the Supreme Court has held that "If the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). However, there is nothing in the PMPA which suggests that the Connecticut Superior Court would not have had jurisdiction over a complaint brought under the PMPA. The Act stipulates that a civil action to redress a violation of the statute "may be brought" in a federal district court; it does not state that such an action *must* be instituted in federal court. 15 U.S.C. § 2805(a) (emphasis supplied). It has been long established that, absent any indication that the federal courts have exclusive jurisdiction over a particular subject, federal laws may be enforced in either the state or federal courts. *Claflin v. Houseman*, 93 U.S. 130, 137, 23 L.Ed. 833 (1876); *Testa v. Katt*, 330 U.S. 386, 390–91, 67 S.Ct. 810, 91 L.Ed. 967 (1947). Therefore, an amendment to the complaint alleging a cause of action under the PMPA would be

within the removal jurisdiction of this Court.[2]

The defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is accordingly denied. SO ORDERED.

---

2. Since no responsive pleading has yet been filed the plaintiff may amend his complaint as of right. Fed.R.Civ.P. 15(a).