455 So.2d 1387 (1984)
LOUISIANA STATE BAR ASSOCIATION
v.
Edward R. DRURY.
No. 82-B-2143.
Supreme Court of Louisiana.
September 10, 1984.
Rehearing Denied October 4, 1984.
*1388 Thomas O. Collins, Jr., Richard A. Deas, Wood Brown, III, New Orleans, Robert J. Boudreaux, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Peé, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Natchitoches, for relator.
Edward R. Drury, New Orleans, in pro. per.
DENNIS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disbarment proceeding against Edward R. Drury. The basis was Drury's conviction in federal court of mail fraud. After the conviction, Drury was suspended from the practice of law. A hearing was held before a commissioner appointed by this court. The commissioner verified the conviction and made findings as to some of the surrounding circumstances, but he did not recommend any particular disciplinary action.

FACTS
The charges against Drury arose out of his practice of sending most of his clients with personal injury claims to Dr. Sam Macaluso for treatment and evaluation. The doctor examined the clients and prepared medical reports for submission to insurance companies in furtherance of settling the clients' claims. Macaluso sent *1389 bills to Drury, rather than the patients, and his fees were later subtracted from the ultimate insurance recovery. According to Drury's testimony at the commissioner's hearing, Dr. Macaluso kept poor records which caused him to double bill Drury's clients and to render late bills on many occasions. Drury alleges that after a period of time he realized that he had paid many of his clients' doctor bills twice, and as a consequence the doctor was in debt to him. The attorney claims that despite problems caused by the doctor's disorganized billing system he continued to send clients to Macaluso because, unlike some other physicians, Macaluso did not object to seeing them although many were poor, ignorant and unwashed. To provide a check upon the doctor's propensity to overbill, Drury testified he established a practice of withholding 15% from the payment of each doctor bill. He claimed that he used these funds with the doctor's permission to offset the doctor's frequent overbillings that were often discovered only after their initial payment and to compensate himself for administrative costs of handling medical bills. While the clients were aware of and agreed to Drury's deduction of his fee and the doctor's bills from their recovery, they were not informed that the lawyer withheld 15% of the medical fees from the doctor. Drury failed to give any specific amount owed by the doctor or to fix a date on which the deductions were to cease. In fact, the 15 percent deduction practice continued from 1975 until 1981 when Drury was indicted by a grand jury on 21 counts of mail fraud and one count of conspiracy to commit mail fraud.
Drury was convicted of 21 counts of mail fraud by a federal district judge, after waiving his right to a jury trial. He was sentenced to five years in prison. After he served four months in confinement in a "jail-type institution," the balance of his sentence was suspended and he was placed on probation for three years and required to pay a $20,000 fine. The federal court of appeals affirmed the conviction and the district court's reasoning. United States v. Drury, 687 F.2d 63 (5th Cir.1983).
Drury was charged with one count conspiracy and with defrauding both his clients and insurance companies. He was not convicted of defrauding insurers, and he was acquitted of the conspiracy charge. The federal district court found that Dr. Macaluso charged Drury's clients the same fee that he would have charged them had they approached him of their own initiative, and that he rendered the same degree of care in treating them. The trial judge noted, "[n]one of the medical reports were false in the sense that they described treatments that did not occur or injuries that the patient had not, in fact, suffered."
The committee urges this court to disbar Drury in view of his final conviction; his breach of fiduciary duty, including depriving his clients of the right to retain an attorney not engaged in blatant violation of the Code of Professional Responsibility; and for his acting with specific intent to defraud his clients.
Drury argues that the basis for his mail fraud conviction, as reflected by the judge's reasons, was the judge's finding that Drury violated disciplinary rule 5-107. The respondent admits that he stands convicted of a federal felony, but he expresses doubt that he violated DR 5-107 since he claims its meaning and applicability to this case are uncertain.
According to the federal district court's opinion, conviction of a violation of the federal mail fraud statute requires proof of the existence of (1) a scheme to defraud; and (2) use of the mails for the purpose of executing the scheme. Under the jurisprudence of the Fifth Circuit and other federal courts of appeals, schemes to defraud fall into two general categories: In the first, the object of the scheme is to deprive the victims of money or other valuable personal property. In the second, the scheme operates to deprive the victim of valuable intangible rights or opportunities.
The federal district court found Drury innocent of the first type of fraud, the object of which is to deprive victims of money or other valuable personal property. *1390 However, the court found Drury guilty of fraud in the second sense of depriving his clients of valuable rights or opportunities. The court reasoned that: Drury violated professional disciplinary rule 5-107; this violation constitutes a breach of his fiduciary duty to his clients; he concealed his 15% kick-back arrangement from his clients; as a result his clients lost the opportunity to negotiate with Drury on fair terms regarding the conditions and fee arrangements of their employment of him; the opportunity to bargain with the full knowledge of all proper material information constitutes a valuable intangible interest of which Drury deprived his clients; the clients also lost the right to retain an attorney who was not engaged in ethical violations; Drury allowed his financial interest in Dr. Macaluso to affect the professional services rendered to his clients; and the concealment of the 15% arrangement was not innocent but done with specific intent to defraud the clients of these intangible rights and opportunities.
The applicable disciplinary rule provides:
DR 5-107 Avoiding Influence by Others Than the Client
(A) Except with the consent of his client after full disclosure, a lawyer shall not:
(1) Accept compensation for his legal services from one other than his client.
(2) Accept from one other than his client any thing of value related to his representation of or his employment by his client.
One of the ethical considerations which precedes the rules in Canon 5 aids in our understanding of this rule; EC5-21 reads:
The obligation of a lawyer to exercise professional judgment solely on behalf of his client requires that he disregard the desires of others that might impair his free judgment. The desires of a third person will seldom adversely affect a lawyer unless that person is in a position to exert strong economic, political, or social pressures upon the lawyer. These influences are often subtle, and a lawyer must be alert to their existence. A lawyer subjected to outside pressures should make full disclosure of them to his client; and if he or his client believes that the effectiveness of his representation has been or will be impaired thereby, the lawyer should take proper steps to withdraw from representation of his client.
DR 5-107 is violated if an attorney, relative to his performance of legal services, accepts compensation or anything of value from someone other than his client without apprising the client of the situation and gaining the client's consent after the client fully understands the implications of representation and the advantages and risks involved. The underlying purpose of the rule is to avoid a conflict of interest and, inter alia, a situation in which some outside economic interest might adversely affect the representation of a client. See M. Pirsig & K. Kirwin, Professional Responsibility, p. 425 et seq. (3d ed. 1977). Whereas a potential conflict does not per se preclude representation, an undisclosed conflict is impermissible and violative of the Code even if no conflict actually arises. An analogous type of conflict is addressed by the Comment, "Lawyers Interests," to Rule 1.7 of the proposed Model Rules of Professional Conduct of the American Bar Association Commission on Evaluation of Professional Standards, commonly referred to as the Kutak Committee:
... A lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.
Applying these precepts to the evidence adduced before the commissioner and the committee on professional responsibility, we conclude that Drury committed multiple continuous violations of DR 5-107. We find that the retentions by Drury were referral fees not repayments of a debt. The debt supposedly owed was never given a fixed amount or specific amortization period. The arrangement continued for over five years and terminated only upon the indictments. The federal district court *1391 found that the 15% withholdings were fees not payments of debts; we agree with that conclusion. Accordingly, Drury had a substantial interest in the doctors' medical fees which might tempt him to overlook overcharges, excessive treatment or poor medicine, should any occur. He clearly was not insulated from the desires of others or pressures that might influence his free professional judgment. The primary object of DR 5-107 is to prevent an attorney from becoming involved in conflicts of interests which may lead to the harm of his clients, the bar or the public. The harm does not have to occur in order for a prohibited conflict to exist.
The purpose of lawyer discipline proceedings is to maintain appropriate standards of professional conduct in order to protect the public and the administration of justice from lawyers who have demonstrated an unwillingness or inability to discharge their professional duties. LSBA v. O'Halloran, 412 So.2d 523 (La.1982); LSBA v. Levy, 400 So.2d 1355 (La.1981); LSBA v. Quaid, 368 So.2d 1043 (La.1979). The discipline to be imposed in a particular case depends upon the seriousness of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. LSBA v. O'Halloran, supra; LSBA v. Levy, supra; LSBA v. Bensabat, 378 So.2d 380 (La.1979); see ABA Joint Committee on Professional Discipline, Standards for Lawyer Disciplinary and Disability Proceedings, § 7.1, p. 113 (1979).
Drury's long-standing, ingrained arrangement with the doctor easily could have lent itself to defrauding insurers and bilking clients. Consequently, we consider these disciplinary violations to be very serious. On the other hand, because no actual deprivation of money or property was proved, the ultimate sanction of disbarment is not appropriate. Considering these mitigating and aggravating circumstances, and the precepts applicable to this case, a substantial period of suspension must be imposed.
It is ordered, adjudged and decreed that Edward R. Drury, respondent, shall have his license to practice in the state of Louisiana suspended for a period of three years, with credit for time elapsed during his present suspension, and that all costs of these proceedings be paid by respondent.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Although I have serious doubts about the propriety of a criminal conviction based on a violation of the Code of Professional Responsibility by use of the mails, I have no doubt that respondent violated DR5-107. Since this disciplinary matter essentially turns on proof of the violation of the disciplinary rule, and not solely on proof of the conviction, I concur in the decision.