465 So.2d 752 (1985)
Ernest A. DUFAU
v.
CREOLE ENGINEERING, INC.
No. 84-CA-340.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
Opinion Amended February 20, 1985.
Rehearing Denied March 18, 1985.
Writ Denied May 24, 1985.
*753 Richard M. Michalczyk, Metairie, for plaintiff-appellant.
Judy Y. Barrasso, John M. Landis, New Orleans, for defendant-appellee.
Before CHEHARDY, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
This lawsuit arose out of an employer-employee relationship. The actions presented before this court involve alleged breaches in contractual obligations, fiduciary duty, and allegations of unfair business practices. Plaintiff, Ernest Dufau, Jr. (Dufau), was employed as an outside salesman for defendant, Creole Engineering, Inc. (Creole), from 1971 through 1981.
Dufau was paid semi-annually at a commission rate of 40% of the gross profits of his sales and he also had a draw against commissions. He paid his own expenses. Creole, a closely held Louisiana Corporation *754 domiciled in Jefferson Parish, is engaged in the business of selling and servicing mechanical products for which it is the authorized distributor within the states of Louisiana and Mississippi.
Dufau argues that he was receiving commission checks from 1979 through 1981 that did not match his computations of commissions earned. On December 21, 1981, Dufau resigned from the employ of Creole, and four months later instituted this litigation against Creole seeking recovery of his unpaid wages, unaccounted commissions, return of his security deposit and travel expenses, totally some $75,638.45, together with damages, statutory penalties and attorney's fees.
In response, Creole filed exceptions of prematurity and no cause of action. The trial court sustained the exception of no cause of action insofar as Dufau's lawsuit sought damages for mental anguish, inconvenience, and attorney's fees, thereby dismissing those demands from the lawsuit.
Creole subsequently replied with an answer and reconventional demand. In its answer, Creole asserted the affirmative defense of offset, failure to disclose that a suspensive condition has occurred, and failure to set forth a cause of action. Additionally, Creole reconvened against Dufau, alleging that Dufau's conduct in commencing his own business while employed by Creole constituted a breach of his employment agreement, a breach of the fiduciary duty owed by Dufau to his employer, and a violation of the Louisiana Unfair Trade Practices Act (LSA-R.S. 51:1401 et seq.). Based on this, Creole sought to recover damages, costs, and attorney's fees for prosecuting its action.
Dufau amended his original lawsuit, and asserted a claim under LSA-R.S. 23:631 et seq., contending that he was owed penalty wages, attorney's fees and costs. Creole answered the amended lawsuit alleging that if Dufau were due any amount of money after his termination pursuant to LSA-R.S. 23:631 et seq. (which Creole denied) that Creole's failure to pay said amount was based on a good faith disagreement relative to the proper interpretation of the employment contract. Creole also believed it was entitled to damages for Dufau's violation of the Uniform Trade Practice Act. Thus, they alleged that Creole was entitled to offset this amount against any commissions or wages that might be due Dufau.
Creole contended further that any claims Dufau may have for penalty wages and attorney's fees, and for recovery of travel expenses, were barred by prescription.
Trial of this matter took over four days and the trial court rendered judgment in favor of Dufau for $48,321.43 and further rendered judgment in favor of Creole on its reconventional demand for $41,809.52. Claims for attorney's fees were denied to both parties and each party paid its respective costs.
In his extensive reasons for judgment, the trial judge held that Dufau was entitled to the following damages:

1. Unauthorized deduction for
 company vehicle $28,179.73
2. Return of Security Deposit 2,000.00
3. Commissions for Nov. 1981 7,944.15
4. Commissions for Dec. 1981 4,018.91
5. Commissions for Jan. thru
 June 1982 12,428.64
 ___________
 Total: $54,571.43
 Less credit for draws against
 commissions 6,250.00
 __________
 $48,321.43

He denied all claims for all shortages in commissions since the plaintiff had failed to prove that the shortages did in fact exist.
The trial court further found Dufau to be guilty of unfair methods of competition in violation of R.S. 51:1405 since he had began operating his own company in direct competition with Creole. Creole was awarded damages in the amount of $41,809.52 which the trial judge held to be the amount of gross profits on sales diverted by Dufau to his newly formed company during September thru December, 1981, while still employed as Creole's salesman.
The following errors have been assigned for our review:

*755 I. ASSIGNMENT OF ERRORS BY DUFAU
1. The trial court erred in failing to award plaintiff unpaid commissions falling in the periods from 1979 through 1981 despite the making out of a prima facie case with no proof of payment/satisfaction or non-entitlement substantiated by defendant.
2. The court committed manifest error in granting a judgment on the reconventional demand in the sum of $41,809.52; without proof that the customer intended to give the sale to Creole; with damages having been awarded based on speculative rather than actual evidence, and in the alternative, the court further failed to breakdown any award of gross profits on the 60/40 basis.
3. The court further committed manifest error in finding that the plaintiff committed an "unfair trade practice". When considering the failure to account for wages on the part of the employer, and that plaintiff's actions did not fall into the category of an Unfair Trade Practices Act, (considering the actions of the employer, and in the past job performance of the employee.) Said judgment was manifestly erroneous.
4. The court committed manifest error in that, although the defendant admits a debt of $8,981.70 to the employee, no award was made for attorney's fees or statutory penalties, despite numerous demands and blatant refusal to pay and/or even account for plaintiff's wages.

II. ASSIGNMENT OF ERRORS BY CREOLE
1. The district court erred in failing to award Creole attorneys' fees and costs under La.R.S. 51:1409, when it awarded damages under that statute.
2. The district court erred in failing to award Creole the value of its employees' time spent attempting to repair the harm caused by Dufau's intentional tort.
3. The district court erred in holding that Dufau is entitled to recover the amounts of $28,179.73 deducted for automobile expenses.
4. The district court erred in failing to find that Dufau's claim for automobile expenses had not prescribed.
5. The district court erred in awarding Dufau the amount of $18,141.70 for commissions subsequent to his termination.
From the testimony of various officials and salesmen, it is determined that in the operation of Creole's business, the company employed several sales representatives, each of whom was required to enter into a written employment agreement as a condition of his employment. Each salesman was assigned a particular geographical area within which he was the exclusive Creole agent and was furnished a company car. Each salesman handled the accounts of the customers in his area, soliciting purchases of products as requested and also soliciting new customers in his territory.
Each Creole salesman was compensated by commissions based upon the gross profits on sales that he solicited, and for which the customer actually paid.
The commissions were paid to the salesmen twice a year within sixty days after the accounting determination date specified in their respective employment contracts.
After the accounting determination date, Creole's accounting department manually compiled the invoices of the sales solicited by each sales representative during the previous six months and compared the invoices to their books to ascertain which sales invoices have been paid for by the customer. A gross commission was then computed based upon the sales paid for by the customers during the commission period.
After business promotions and travel expenses were deducted from gross commissions, each salesman was paid the remaining amount, which is called his net commission. The amount paid, however, may not ultimately be the amount earned by the sales representative since customers sometimes returned merchandise for refunds after the commission had been paid. When *756 merchandise was returned, the sale was voided and any commission earned for that sale was negated.
To insure that Creole would be reimbursed for unearned commissions paid to a salesman, each employment contract required the salesman to provide Creole with a security deposit, to cover such items as unearned commissions and late expense charges. It was Creole's established policy to retain the security deposits for a period of one year after an employee's termination to insure that all late charges or returned merchandise were accounted for. During the period the security deposit was held by Creole, the salesman was credited with interest earned.
All of Creole's employment contracts provided that Creole will pay a salesman who terminates his employment only one-half of the commissions he would have earned were he still employed at the time the commission is paid. The amount retained by Creole was intended to cover the cost of all follow-up services required in connection with the sales made by the departing representative.
Dufau's employment history with Creole began in 1972. At the time, Dufau was hired as a full-time sales representative, Creole had five full-time employees, with Dufau and another as the only salesmen.
On August 22, 1977, Dufau and Creole entered into a written employment agreement, which under the terms of said contract, Dufau's commissions were payable only twice a year, within sixty days after the accounting determination date specified in the contract. Commissions were payable only on sales actually paid for by the customer. Dufau further agreed that his earnings constituted gross commissions less certain expenses, including his travel for the pay period.
Creole argues that Dufau was, or at least, should have been aware that throughout his employment with Creole these business expenses, including automobile expenses, were deducted from the gross commissions earned.
Dufau resigned from Creole on December 21, 1981. However, while he was still employed by Creole during 1981, Dufau organized a sole proprietorship named the Pump & Valve Company ("Pump & Valve"). Dufau opened a checking account in the name of Pump & Valve Company in September, 1981, and had business cards printed. In September, 1981, and thereafter during his employment with Creole, Dufau, on behalf of Pump & Valve, obtained orders from Red Fox, Brown & Root, and Transwater Marine. These orders were for pumps, and other products Creole had been selling to these customers. During the period from September, 1981, to December, 1981, while he was employed by Creole, Dufau accepted for Pump & Valve from Creole's customers orders in excess of $89,000. These products otherwise would have been purchased from Creole. Creole contends that they would have realized gross profits totalling $41,809.52 on these sales.
Creole argues that these sales were the direct result of Dufau's active solicitation for Pump & Valve in direct competition with Creole. Richard Brower, Red Fox's buyer, testified in deposition that when he gave the purchase orders to Pump & Valve he did not know that Dufau was still employed by Creole.
In January, 1982, Creole discovered that Dufau not only had set up his own business in direct competition with Creole, but had actually done so while still employed by Creole. Furthermore, Creole discovered that, prior to his resignation, Dufau had diverted business from Creole's customers to his new company. Until this discovery, Creole had no reason to believe that it had not been represented in the territory assigned Dufau, or that it had been effectively eliminated from competition in that territory by its own employee.
Dufau contends that since his employment with Creole as an outside sales representative from 1971, he has conducted all his activities in a professional and responsible business manner.
*757 Dufau contends that he resigned from Creole's employ for numerous reasons, but primarily because Creole failed to substantiate his reduced commissions and the longer he was employed, the more burdensome and difficult it became to keep track of his commissions that were owed.
Dufau decided to resign from Creole and started his company on January 1, 1982, in St. Tammany Parish. From August, 1981, he alleges that he began informing certain individuals, including some customers of Creole, that he would no longer be employed with Creole as of the end of 1981. He further contends that in September of 1981, he was solicited by Mike Granger and Richard Brower, as well as an employee of Brown and Root, Inc. to make certain sales. Dufau informed the customers that he was leaving; that they would have two choices, 1) they could either do business with Creole or 2) The Pump & Valve Company if they were interested in his follow up. Dufau contends he had to remain with Creole in order to receive his pay through October which would not be paid until December.

DUFAU'S CLAIM
Although Dufau has presented allegations concerning unpaid commissions for June 1979June 1981, in the amount of $11,122.06 and other "unknown" shortages in the amount of $9,944.96; the trial court denied these claims since Dufau failed to prove by a preponderance of the evidence that the shortages did exist. We agree.
The record definitely indicates that throughout Dufau's employment there was dispute and confusion surrounding his commissions as a salesman for Creole. However, the trial court had sufficient evidence before it to support its judgment, and we agree with the conclusion reached by the trial judge.
Furthermore, the award for reimbursement of deductions for a company vehicle likewise is amply supported by the record. Dufau and other salesmen understood that they were furnished a company car and the trial judge correctly found this to be a company custom and an employment benefit. We so affirm the reimbursement to Dufau of $28,179.73 for deductions for a company vehicle.
Accordingly, we affirm the judgment of the lower court in the amount of $48,321.43. We conclude that the trial court's holdings are adequately supported by the evidence and absent a showing of manifest error, his findings of fact will not be disturbed on appeal, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Dufau's claim for attorney's fees and penalties under R.S. 23:631 et seq. were denied and we agree. La.R.S. 23:631 is a penal statute which requires that an employee be paid the amount he has earned within a three day period. A good-faith, non-arbitrary defense to liability for unpaid wages excuses an employer from the penal provisions of the statute. See Carriere v. Pee Wee's Equipment Company, 364 So.2d 555 (La.1978); M & D Simon Company v. Blanchard, 389 So.2d 401 (La.App. 4th Cir.1980).
Creole did not act in bad faith since it had valid offsetting claims against Dufau and thus, cannot be held liable for the penal provision of La.R.S. 23:631.
Likewise, attorney's fees are awarded only in the event of recovery under R.S. 23:631, Carriere v. Pee Wee's Equipment Company, supra.

CREOLE'S CLAIM
The trial judge determined that the diversion of Creole's business to Dufau's own company constituted unfair methods of competition in violation of La.R.S. 51:1405.
The court pointed out in his judgment; "Dufau elected to place the business in his company instead of with Creole. Such actions render Dufau liable under the reconventional demand."
To determine what constitutes unfair competition must be decided on a case by case basis. In National Oil Service of Louisiana Inc. v. Brown, 381 So.2d 1269 (La.App. 4th Cir.1980) the court stated:

*758 "... such a determination involves a balancing between the right of the employee to individual freedom on one hand and the right of the employer to honest and fair competition and to protection of business assets and property in the nature of trade secrets on the other hand."
The solicitation and diversion of an employer's customers prior to termination constitutes unfair competition entitling the plaintiff to recover damages. As stated by the trial court, "an employee owes his employer a duty to be loyal and faithful to the employer's interest in business".
The entire record indicates Dufau's problems and frustrations with Creole however, his actions of placing the business in his company while still employed by Creole can't be condoned.
Creole's expert witness, Paul Forsyth testified that the gross profits that Creole would have realized on the diverted sales would have been $41,809.52. This was suggested through documentation showing the standard costs and profits for the sales at issue.
Dufau contends that Creole's recovery should be limited to the profits he made on these sales. He testified that his gross profits were only $13,191.96; however, he could not support this contention. Dufau admitted that he did not have adequate records reflecting his costs in 1981, and his wife testified she had no personal knowledge of the transactions.
The definition of unfair trade practices is left up to the courts. In Coffey v. Peoples Mortgage & Loan of Shreveport, Inc., 408 So.2d 1153 (La.App. 2nd Cir.1981) the court stated:
"[A] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."
Therefore, this court finds that in order for Creole to recover under the Louisiana Unfair Trade Practices Act, Creole must prove some element of fraud, misrepresentation, deception, or other unethical conduct on the part of Dufau. The trial court felt these facts of the business deception were proven by a preponderance of the evidence and we see no manifest error in his conclusion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial court awarded Creole $41,809.52 on its reconventional claim. The court's Reasons for Judgment are void of any reference as to what the figure totally represents. We hold that not only did Dufau violate the Unfair Trade Practices Act, there was an obvious breach of fiduciary duty owed to Creole.
With respect to the failure to assess attorney's fees by the trial court, we conclude that this reluctance is well founded. LSA-R.S. 51:1409(A) states that proof by any person who suffers an ascertainable loss of money as a result of an unfair act or practice may bring an action to recover actual damages. Furthermore, this same statute also provides that in the event damages are awarded, the court shall award to the person bringing the actions reasonable attorney's fees.
We should note that the figure assessed as damages probably reflects an accurate account of the overall damage inflicted upon Creole.
This court recognizes that Section 1409 provides that attorney's fees and costs are recoverable where damages are awarded pursuant to this Section. However, we hold that because Creole's reconventional demand and Dufau's principal demand asserted claims which were responsive to each other's cause of action, attorney's fees were properly denied. The equities of this case dictate that to require Dufau to respond in the payment of attorney's fees for a matter where both parties share equal or similar fault and responsibility would be an affront to our system of justice and fair play.
The record clearly reflects the mutuality of fault which existed between the parties in this matter. To allow Creole attorney's fees or costs would be an inequity. This *759 case is clearly distinguishable from others, because in this matter both parties are at fault and each of their actions are responsive to the other. Under these circumstances we agree with the trial judge in not imposing attorney's fees or costs against Dufau.

CONCLUSION
The trial court properly applied the governing legal standards and made findings of fact that are fully supported by the evidence. His judgment is fair and equitable under the circumstances of this case.
For the foregoing reasons, the judgment of the trial court is affirmed.
Each party is to bear their respective appeal costs.
AFFIRMED.