Herbert **CASON**

v.

**TEXACO, INC.**

**Civ. A. No. 83–936–B.**

United States District Court,
M.D. Louisiana.

Nov. 7, 1985.

A. Justin Ourso, III, Margaret E. Woodward, Barham & Churchill, New Orleans, La., for plaintiff.

Larry N. Port, C. Suzanne Dittmer, New Orleans, La., G. William Jarman, Kean, Miller, Hawthorne, Darmond, McCowan & Jarman, Baton Rouge, La., for defendant.

POLOZOLA, District Judge.

Herbert Cason filed this suit alleging certain violations of the Petroleum Marketing and Practices Act ("PMPA")[1] and the Louisiana Unfair Trade Practices and Consumer Protection Law[2]. Cason contends that Texaco, Inc. ("Texaco") has engaged in unfair trade practices and predatory pricing schemes in an effort to terminate his lease of a service station. According to Cason, Texaco engaged in these alleged practices to transform the plaintiff's dealer operated station into a company operated station.

Texaco has filed three motions for summary judgment.[3] In its motions, Texaco seeks to dismiss the claim brought pursuant to the PMPA, certain of plaintiff's Unfair Trade Practices and Consumer Law claims, and, finally, seeks to resolve the issue of whether there was a breach of a fiduciary relationship between Texaco and the plaintiff. In addition, Texaco has filed three motions in limine which seek to exclude evidence of (a) unfair trade practices occurring prior to August 30, 1982; (b) a nationwide plan of Texaco to eliminate independent retailers; and (c) Cason's intent to sublease the retail marketing outlet.

I. Petroleum Marketing and Practices Act

 Texaco reurges an earlier motion for summary judgment which seeks to dismiss two claims alleging violations of PMPA. The first claim alleges a violation of 15 U.S.C. § 2802(b)(3)(A) which provides in pertinent part that:

> For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:
>
> (A) The failure of a franchisor and the franchisee to agree to changes or additions to the provisions of the franchise if
>
>> (i) such changes or addition are the result of determinations made by the franchisor in good faith and in the normal course of business; and
>>
>> (ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise agreement.

The plaintiff contends that the only new issue raised by the present motion is his alleged admission that he was not "singled out for harsh treatment by Texaco." Texaco asserts that this admission is the equivalent of the plaintiff having admitted that Texaco acted in "good faith" in proposing changes as is required by 15 U.S.C. § 2802(b)(3)(A). Senate Report, S.Rep. No. 95–731, 95th Cong.2d Sess. 37, reprinted in 1978 U.S.Code Cong. & Ad.News 873, 895–896, states that the "good faith test is meant to preclude sham determinations from being used as an artifice for termination or nonrenewal."[4] The good faith requirement of the statute has been interpreted to require only "subjective good faith, i.e. a 'good heart' without evil intent." *Munno v. Amoco Oil Co.*, 488 F.Supp. 1114, 1120 (D.Conn.1980).[5] This Court holds that questions of subjective intent are factual inquiries. *Tiller v. Amerada Hess Corp.*, 540 F.Supp. 160 (D.S.C.

---

1. 15 U.S.C. § 2801–2806.

2. Louisiana Revised Statutes 51:1401–1418.

3. In its first motion, Texaco reurges an earlier motion for summary judgment which was denied by the Court on June 29, 1984.

4. See also *Roberts v. Amoco Oil Co.*, 740 F.2d 602 (8th Cir.1984).

5. See also *Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir.1982); *Meyer v. Amerada Hess Corp.*, 541 F.Supp. 321, 330 (D.N.J.1982); *Palmieri v. Mobil Oil Corp.*, 529 F.Supp. 506, 509–511 (D.Conn.1982), aff'd, 682 F.2d 295 (2d Cir.1982).

1981).[6] Therefore, this Court is precluded from granting the motion for summary judgment at this time because of the factual dispute regarding the intent of the parties.[7]

Texaco also contends that plaintiff's allegations that Texaco violated 15 U.S.C. § 2802(b)(3)(D)(iii) are without merit. 15 U.S.C. § 2802(b)(3)(D) provides

(3) For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:

(D) ... a determination made by the franchisor in good faith and in the normal course of business, if—

(i) such determination is—

(I) to convert the leased marketing premises to a use other than the sale or distribution of motor fuel,

(II) to materially alter, add to, or replace such premises,

(III) to sell such premises, or

(IV) that renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee;

(ii) with respect to a determination referred to in subclause (II) or (IV), such determination is not made for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for such franchisor's own account; and

(iii) in the case of leased marketing premises such franchisor, during the 90-day period after notification was given pursuant to section 104 [15 U.S.C. § 2804], either—

(I) made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises; or

(II) if applicable, offered the franchisee a right of first refusal of at least 45-days duration of an offer, made by another, to purchase such franchisor's interest in such premises.

Cason has alleged in his complaint that Texaco has violated the PMPA by not offering to assign its lease to the plaintiff. Texaco contends, however, that 15 U.S.C. § 2802(b)(3)(D)(iii) requires it to offer to assign its interest in the lease only if it had refused to renew the franchise because of its decision "to materially alter, add to, or replace such premises." See 15 U.S.C. § 2802(b)(3)(D)(i)(II). Texaco asserts that since it offered to renew the franchise, this section is inapplicable to the present set of facts.

■ The Court finds that it is premature to make a legal determination of the exclusiveness of the grounds for nonrenewal set forth in 15 U.S.C. § 2802(b)(3). There are genuine issues of material fact to be resolved at the trial which preclude the Court from granting the motion for summary judgment. See *Dorden v. Heist*, 743 F.2d 1135 (5th Cir.1984) and *Williams v. Shell Oil*, 677 F.2d 506 (5th Cir.1982), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed. 933 (1982). Once these factual determinations are made, the Court can then decide the legal issues based on those factual determinations. See *Federal Election Commission v. Lance*, 635 F.2d 1132, 1138 (5th Cir.1981), appeal dismissed, *cert. denied* by *Lance v. Federal Election Commission*, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981).

II. Louisiana Unfair Trade Practices and Consumer Protection Law, Louisiana Revised Statute 51:1401–1418

Texaco's second motion for summary judgment pertains to plaintiff's claims which were filed pursuant to Louisiana's

---

6. The Court notes that this subjective intent does not need to be proved by direct evidence of actual state of mind. *Munno v. Amoco Oil Co.*, 488 F.Supp. 1114, 1120 (D.Conn.1980). Instead, "subjective intent is usually a matter of inference to be derived from all of the objective facts and evidence." *Tiller v. Amerada Hess Corp.*, 540 F.Supp. 160 (D.S.C.1981).

7. A motion for summary judgment may be granted only when there is no material issue of fact to be resolved at trial and the mover is entitled to judgment as a matter of law. *Dorden v. C.H. Heist*, 743 F.2d 1135 (5th Cir.1984); *Williams v. Shell Oil*, 677 F.2d 506 (5th Cir.1982), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982).

Unfair Trade Practices and Consumer Protection Law. Louisiana Revised Statute 51:1401–1418. Two assertions are advanced by Texaco with regard to these claims.

Texaco contends that all "unfair trade practices" alleged by the plaintiff to have occurred prior to August 30, 1982, have prescribed. This contention is based upon Louisiana Revised Statute 51:1409(E) which provides that "[t]he action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." Cason argues, however, that "Texaco's continuing and repeated wrongful acts" should be regarded as a continuing violation and as such, prescription did not commence to run until the violation had ceased. In support of this contention, the plaintiff cites several decisions which hold that "[w]here the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage." *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La.1982).[8] The cases relied upon by the plaintiff involve the judicial construction of Louisiana Civil Code article 3537[9], a general prescription statute, and the application of the continuing violation doctrine to this statute. This Court has failed, however, to find a case discussing the applicability of such doctrine to the prescription statute at issue. The present issue before the Court, therefore, is res nova.

■■■ Louisiana Revised Statute 51:1409 has been interpreted to be penal in nature.

*Morris v. Rental Tools, Inc.*, 435 So.2d 528 (La.App. 5th Cir.1983) and *Coffey v. Peoples Mortg. & Loan of Shreveport, Inc.*, 408 So.2d 1153, 1156 (La.App. 2nd Cir. 1981). Therefore, it is subject to strict construction. *Federal Trade Commission v. Mandel Brothers*, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959) and *Diversacon Industries v. National Bank of Commerce of Mississippi*, 629 F.2d 1030 (5th Cir.1980). Section 1409(E) is unambiguous and clearly and expressly provides that a civil action brought pursuant to Louisiana Revised Statute 51:1409 prescribes unless such action is brought within one year from the date of the alleged violation. The penal nature of this statute prohibits this Court from applying the doctrine of the continuing violation to prevent the commencement of the running of prescription under Section 1409(E).[10] Therefore, this Court holds that all of the unfair trade practices claims that have occurred prior to one year of the date of the filing of this suit have prescribed.[11] The Court is unable, however, to determine from the record and the facts presented in the briefs which of the alleged unfair trade practices have occurred prior to one year of the filing of the present suit. It is incumbent upon the defendant to prove that a claim has prescribed. See, e.g., *DiCarlo v. Laundry & Dry Cleaning Service*, 178 La. 676, 152 So. 327 (1933). Since Texaco has not met its burden of proving which of the alleged unfair trade practices occurred prior or to one year from the filing of suit, the Court is precluded from granting this motion for summary judgment based upon prescription.[12]

---

**8.** See also *Craig v. Montelepre Realty Co.*, 252 La. 502, 211 So.2d 627 (1968); *Devoke v. Yazoo & M.V.B. Co.*, 211 La. 729, 30 So.2d 816 (1947); *DiCarlo v. Laundry & Dry Cleaning Service*, 178 La. 676, 152 So. 327 (1933); *Wilson V. Hartzman*, 373 So.2d 204 (La.App. 4th Cir.1979), *writ denied* 376 So.2d 961 (1979); *Landry v. Pierre Part Natural Gas Company, Inc.*, 344 So.2d 412 (La.App. 1st Cir.1977); *Florsheim v. Department of Highways*, 201 So.2d 155 (La.App.2d Cir. 1967).

**9.** Presently articles 3492 and 3493.

**10.** See *Butler v. Charity Hosp. of New Orleans*, 442 So.2d 531, 535 (La.App. 1st Cir.1983), where

the First Circuit Court of Appeals refused to apply the continuing violation theory to Civil Service actions.

**11.** The Court is confused why mover asks that all actions allegedly occuring prior to August 30, 1982, be dismissed when the suit was filed on August 29, 1983.

**12.** However, in view of the Court's legal ruling herein, Texaco may wish to review its motion for summary judgment if the parties cannot stipulate which of the acts occurred more than one year from the date suit was filed.

Texaco also urges that the claims asserted in paragraphs 17(a) and 17(b) of the plaintiff's complaint are preempted by PMPA. The claims asserted in these two paragraphs of the complaint are based upon the allegation that the unreasonableness of the rent charged and the unfairness of the renewal lease proposed constitute unfair trade practices under Louisiana Revised Statute 51:1405. The relevant provision of PMPA which controls the relationship between state and local laws and PMPA is 15 U.S.C. § 2806(a) which provides as follows:

> To the extent that any provision of this title applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this title.

(Emphasis added.)

This statute is unambiguous and clearly preempts only those state laws which apply to the termination of a franchise or the nonrenewal of a franchise relationship (or notice with respect to these) and only to the extent that such state law is in conflict with PMPA. *Ted's Tire Service, Inc. v. Chevron U.S.A., Inc.*, 470 F.Supp. 163, 164

(D.Conn.1979). In *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. 1008, 1018 (N.D.Ga.1979), the court held that a Georgia state law controlling "the terms of a franchise agreement"[13] is not preempted by 15 U.S.C. § 2806(a) even though the court did recognize that the provision "could have ... some fortuitous and attenuated application to a lawsuit over termination or nonrenewal of a franchise relationship."[14] The congressional intent is clear and unambiguous and mandates a finding by this Court that Louisiana Revised Statutes 51:1401–1418 is not preempted by Section 2806(a) because these state laws do not attempt to regulate the termination of a franchise, the nonrenewal of a franchise relationship or the furnishing of notice with respect to such termination or renewal.

## III. Breach of the Fiduciary Relationship

Texaco's final motion for summary judgment is based upon the alleged fiduciary duty owed to Cason by Texaco. Texaco contends that no fiduciary duty is owed to Cason under federal or state law. Therefore, Texaco argues that it is entitled to judgment on this issue.

The PMPA is the only federal law which the Court finds could be used as the basis for a fiduciary duty under the present set of alleged facts. The PMPA is replete with references that the franchisor act in good faith with regard to decisions and determinations made concerning termination and nonrenewal of franchises. See, e.g., 15 U.S.C. § 2802(b)(3)(A) and (D). The good faith requirement has been interpreted as mandating only "subjective good faith, i.e. a 'good heart' without evil intent." *Munno v. Amoco Oil Co.*, 488 F.Supp. 1114, 1120 (D.Conn.1980).[15] The

13. Ga.Code § 106–1104(h) provides that it is unlawful "to provide any term, or condition in any marketing agreement, or other agreement, ancillary or collateral thereto, which term or condition directly or indirectly violates this Chapter...."

14. In *Exxon Corp. v. Busbee*, 644 F.2d 1030 (5th Cir.1981), *cert. denied* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed. 239 (1981) the 5th Circuit affirmed the district court's holding that the Georgia Act

was not unconstitutionally vague and unenforceable. The precise issue before this Court, however, was not addressed by the 5th Circuit.

15. See also *Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir.1982); *Meyer v. Amerda Hess Corp.*, 541 F.Supp. 321, 330 (D.N.J.1982); *Palmieri v. Mobil Oil Corp.*, 529 F.Supp. 506, 509–511 (D.Conn.1982), aff'd, 682 F.2d 295 (2nd Cir. 1982).

Court refuses to judicially expand the good faith requirement of the PMPA beyond this subjective good faith requirement intended by the Congress. Therefore, the Court finds that good faith within the meaning of the PMPA is not the same as that which is required of a fiduciary. Courts have consistently required more than subjective good faith when the fiduciary's duty to act in good faith is at issue. For example, in *Arnott v. American Oil Co.*, 609 F.2d 873, 881 n. 6 (8th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), the Eighth Circuit Court of Appeals approved the trial court's jury instruction describing the fiduciary relationship between a dealer and an oil company, based upon South Carolina law, as requiring that "neither party exert undue influence or pressure upon the other, take selfish advantage of his trust or deal with the subject matter of the trust in such a way as to benefit himself or prejudice the other except in the exercise of the *utmost good faith* and with the full knowledge and consent of the other person involved." (Emphasis added.) "Utmost good faith" is significantly different from "subjective good faith." Therefore, the Court finds as a matter of law that the PMPA does not create a fiduciary relationship between the franchisor and the franchisee.

**16.** For a discussion of the scope of preemption mandated by 15 U.S.C. § 2806(a) see Part II of this opinion.

**17.** La.R.S. 51:1453(A) provides in pertinent part that:

A refiner or retailer shall not cancel or fail to renew a franchise unless he furnishes notice of intent to the other party. Such notice of intent shall be in writing and sent to such party by certified mail not less than ninety days prior to the dates on which such franchise will be cancelled or not renewed.... Such notice of intent shall contain in the case of cancellation a statement of intention to cancel, together with the reasons therefor, and the date on which such action shall take effect. In the case of nonrenewal, such notice shall recite the date on which such franchise term expires.

**18.** La.R.S. 51:1453(B) provides that:

A refiner or retailer shall not cancel a franchise during the stated term of any franchise

■ Since this Court finds that no fiduciary duty can be premised upon federal law, any fiduciary duty owed by Texaco to Cason must be premised upon the laws of Louisiana or jurisprudence established by its courts. Texaco contends that any fiduciary duty based upon The Service Station Dealers Day in Court Act, Louisiana Revised Statute 51:1451–1455, is preempted by the PMPA. As noted above, 15 U.S.C. § 2806(a) mandates the preemption only of those state laws which apply to the termination of a franchise or the nonrenewal of franchise relationship (or notice with respect to these) and only to the extent that such is in conflict with the PMPA. *Ted's Tire Service, Inc. v. Chevron U.S.A., Inc.*, 470 F.Supp. at 164 and *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. at 1018.[16] The Service Station Dealers Day in Court Act, enacted in 1974, regulates notice requirements for the termination or failure to renew a franchise[17] and the causes for which a franchise may be cancelled during its stated term.[18] Therefore, this Court holds that The Service Station Dealers Day in Court Act, Louisiana Revised Statute 51:1451–1455, which imposes good faith standards[19] upon franchisors (and franchisees) with regard to termination and nonrenewal of franchises is preempted by the PMPA in so far as it

unless the party whose franchise is attempted to be cancelled has failed to comply with any essential and reasonable requirement of such franchise, or has failed to comply substantially with any other condition, provision or stipulation of the franchise, unless the grounds for cancellation are such which do not require notice pursuant to Subsection A of this section, or unless the cancellation is otherwise authorized by other laws of this state, or unless such refiner or retailer withdraws entirely from the sale of motor gasoline in this state, or unless the parties mutually consent to the cancellation in writing.

**19.** La.R.S. 51:1452(4) defines the term "good faith" as the duty of each party to any franchise, and all officers, employees or agents thereof, to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party; provided, that recommendation, endorsement, exposition, urging or argument shall not be deemed to constitute a lack of good faith.

imposes a greater duty of good faith than that required by the PMPA.

█ Finally, the Court must consider whether there is a jurisprudential basis upon which a fiduciary duty may be premised. Although Cason cites several cases which stand for the proposition that a fiduciary relationship exists between franchisor and franchisee, these cases are from jurisdictions other than Louisiana and are not based on Louisiana law.[20] This Court has failed to find a Louisiana case where a Louisiana court has decided the issue of whether a fiduciary relationship exists between a franchisor and a franchisee. Since there are no decisions from a Louisiana state court, this Court must develop the rule of law pertaining to this issue which it believes the Louisiana Supreme Court would be likely to develop in the future if it was confronted with this issue. *Green v. Amerada-Hess Corp.*, 612 F.2d 212 (5th Cir.1980), *rehearing denied* 614 F.2d 1298 and *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980). Based upon a review of those relationships where Louisiana courts have found fiduciary relationships,[21] this Court holds that if the Louisiana Supreme Court was confronted with this issue, it would hold that there is no fiduciary duty between a franchisor-franchisee under the facts of this case. Therefore, since this Court holds that Texaco does not owe Cason a fiduciary duty under Louisiana law or jurisprudence, Texaco's motion for summary judgment based on the ground that there exists no fiduciary duty owed by Texaco to the plaintiff must be granted. It is clear that there are no material issues of fact to be resolved at trial on this issue and Texaco is entitled to summary judgment as a matter of law. See *Dorden v. C.H. Heist*, 743 F.2d 1135 and *Williams v. Shell Oil*, 677 F.2d 506.

### IV. Evidence of Alleged Unfair Trade Practices Occurring Prior to August 30, 1982

Texaco, in its first motion in limine, seeks to prohibit the introduction of evidence concerning alleged unfair trade practices that have occurred prior to one year before the institution of the present suit. Texaco asserts that since recovery for these alleged unfair trade practices is barred by prescription,[22] evidence of these alleged practices is irrelevant, immaterial and extremely prejudicial. In opposition to the motion, Cason contends that evidence of Texaco's alleged unfair trade practices occurring prior to the prescriptive period is admissible to prove "the continuing and cummulative effect" of the practices of Texaco, some of which have allegedly occurred within the prescriptive period.

█ The question of the admissibility of evidence is governed by the Federal Rules of Evidence. Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by

**20.** See *Arnott v. American Oil Company*, 609 F.2d 873 (8th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980); *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978); *Ashland Oil, Inc. v. Donahue*, 159 W.Va. 463, 223 S.E.2d 433 (W.Va.1976); *Shell Oil Company v. Marinello*, 120 N.J.Super. 357, 294 A.2d 253 (1972), aff'd, 63 N.J. 402, 307 A.2d 598 (1973), *cert. denied*, 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974); *Seegmiller v. Western Men, Inc.*, 20 Utah 2d 352, 437 P.2d 892 (1968).

**21.** For example, Louisiana courts have held that a fiduciary relationship exists between the following: (a) attorney-client [*Louisiana State Bar Ass'n v. Drury*, 455 So.2d 1387 (La.1984) *cert. denied* — U.S. ——, 105 S.Ct. 1358, 84 L.Ed. 379 (1985); *Louisiana State Bar Ass'n v. Orpys*,

427 So.2d 842 (La.1983); *Louisiana State Bar Ass'n v. Jordan*, 375 So.2d 89 (La.1979); *Louisiana State Bar Association v. Quaid*, 368 So.2d 1043 (La.1979)] (b) insured-insurer [*Foster v. American Deposit Ins. Co.*, 435 So.2d 571 (La. App. 3rd Cir.1983) ] (c) majority shareholder-minority shareholder [*Levy v. Billeaud*, 443 So.2d 539 (La.1983); *Johansen v. Port Jewell, Inc.*, 351 So.2d 184 (La.App. 4th Cir.1977) application not considered by *Johansen v. Port Jewell, Inc.*, 352 So.2d 705 (La.1977) ] (d) outside salesman-employer [*Dufau v. Creole Engineering, Inc.*, 465 So.2d 752 (La.App. 5th Cir.1985) *writ denied* 468 So.2d 1207 (La.1985) ].

**22.** See Part II of the present opinion for the Court's reasons that recovery for such alleged unfair trade practices is barred by the application of the doctrine of prescription.

the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." [23] The fact that an alleged activity has occurred prior to the prescriptive period does not *ipso facto* make evidence of such activity irrelevant.[24] In *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), the United States Supreme Court vacated a judgment and ordered a remand of the case because the trial court persistently excluded evidence of alleged activities occurring prior to the year the plaintiffs entered the vanadium industry. The Court held that evidence of activities allegedly occurring prior to this date was relevant to the plaintiffs' allegation that there was a conspiracy and a monopoly when they entered the industry and which continued on until they were eliminated from such industry in furtherance of such conspiracy and monopoly. Although the evidence was held admissible, the *Continental* Court issued a caution by stating that "[w]e do not mean that a trial court may not place reasonable limits upon such evidence or set a reasonable cutoff date, evidence before which point is to be considered too remote to have sufficient probative value to justify burdening the record with it." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. at 710, 82 S.Ct. at 1416. Furthermore, the district court has wide discretion in ruling upon questions concerning the remoteness of evidence. *Keyes v. School District No. 1, Denver, Colorado*, 521 F.2d 465 (10th Cir.1975); *United States v. Kahaner*, 317 F.2d 459 (2nd Cir.1963), *cert. denied*, 375

U.S. 835, 836, 84 S.Ct. 62, 73, 74, 11 L.Ed.2d 65, *reh'g denied*, 375 U.S. 926, 982, 84 S.Ct. 263, 478, 11 L.Ed.2d 169, 429 (1963); *Miller v. Alexandria Truck Lines, Inc.*, 273 F.2d 897 (5th Cir.1960) *rehearing denied* and opinion corrected 274 F.2d 942 (5th Cir.1960). In applying the foregoing principles to the present case, the Court finds that evidence of alleged unfair trade practices occurring prior to August 30, 1982, has sufficient probative value to justify its admission as the record now stands. Contrary to the defendant's assertion that such evidence has no purpose in this lawsuit, the Court finds that such evidence is probative of, *inter alia*, the issue of Texaco's good or bad faith.[25]

Texaco further contends that such evidence should be excluded because its introduction would be prejudicial to Texaco's case. Presumably the defendant is relying upon Rule 403 of the Federal Rule of Evidence.[26] The determination as to whether the probative value of relevant evidence is substantially outweighed by danger of unfair prejudice is within the sound discretion of the trial court. *United States v. Marino*, 617 F.2d 76 (5th Cir. 1980), *reh'g denied*, 620 F.2d 300, *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). The Court finds that evidence of these alleged unfair trade practices would not create unfair prejudice to the defendant. Therefore, the Court concludes that such evidence should not be excluded at this time.

**23.** See also *United States v. John Clyde Abel*, —— U.S. ——, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

**24.** In *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 75–76, 31 S.Ct. 502, 520–21, 55 L.Ed. 619 (1911), the United States Supreme Court approved the consideration of evidence as to the defendants' activities eleven years prior to the enactment of the Sherman Act in 1890 to determine the monopolistic intent of the establishers of the Standard Oil Trust. See also *Klein v. American Luggage Works, Inc.* 206 F.Supp. 924, 936 (D.Del.1962), where evidence of activities that had occurred more than four years prior to the commencement of the suit for conspiracy to violate anti-trust laws was admissible

although the statute of limitation applicable was four years. Judgment reversed on other grounds, 323 F.2d 787 (3rd Cir.1963).

**25.** See the discussion of *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 75–76, 31 S.Ct. 502, 520–21, 55 L.Ed. 619 (1911), at note 23, *supra*.

**26.** Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## V. Evidence Concerning an Alleged Nationwide Plan of Texaco to Eliminate Independent Retailers

 Texaco has filed a second motion in limine which seeks to prohibit the introduction of evidence concerning an alleged nationwide plan of Texaco to eliminate independent retailers. Texaco asserts that evidence of alleged actions by Texaco with respect to other retailers is irrelevant because the only criterion of Texaco's conduct at issue in this case is the requirement under PMPA that Texaco act in good faith with regard to Cason.

15 U.S.C. § 2802(b)(3)(A) provides that nonrenewal may be based upon the failure to agree to changes in the provisions of a franchise provided that:

> (i) such changes or additions are the result of determinations made by the franchisor in good faith and in normal course of business; and

> (ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise agreement.

Cason has alleged *inter alia*, that a new lease proposed by Texaco was not proposed in good faith. Instead, Cason alleges, the proposal was a sham to prevent the renewal of his franchise. As noted previously,[27] the good faith test was inserted into the act to preclude the use of sham determinations to terminate or to fail to renew a franchise.[28] Texaco contends that "[t]he only basis for plaintiff's attempt to introduce that kind of testimony [evidence of the nationwide plan] would be to show some type of evil purpose behind Texaco's action." [29] The Court feels that it is exactly this "evil purpose behind Texaco's actions" that Cason wants to demonstrate by the introduction of this evidence since the good faith requirement has been interpreted to require only "subjective good faith, i.e., a

'good heart' without evil intent." *Munno v. Amoco Oil Co.*, 488 F.Supp. at 1120. The Court, therefore, holds that evidence of an alleged nationwide plan to eliminate independent retailers is relevant to the issue of Texaco's good faith with regard to the lease proposed because "subjective intent is usually a matter of inference to be derived from all of the objective facts and evidence." *Tiller v. Amerada Hess Corp.*, 540 F.Supp. at 160.

## VI. Evidence Concerning the Plaintiff's Intent to Sublease the Retail Marketing Outlet

 Texaco, in its final motion in limine, seeks to prohibit the introduction of evidence concerning Cason's intent to sublease the service station. Texaco contends that evidence of the alleged attempted assignment of the lease is irrelevant because such evidence would not have probative value for the claims pursuant to either PMPA or the state Unfair Trade Practices Act. The Court finds that this contention is without merit. Such evidence could be probative for claims under both PMPA and the Louisiana Unfair Trade Practices Act. With regard to the PMPA claims, evidence regarding Cason's alleged attempted assignment and the reasons for the failure to sublease the station may be relevant to the issue of Texaco's bad faith in proposing the changes in the lease which subsequently were rejected by Cason and then asserted by Texaco as the reason for the nonrenewal of the franchise in accordance with 15 U.S.C. § 2802(b)(3)(A). In addition, Texaco's alleged actions with regard to the proposed assignment of the lease may be factually characterized as an unfair trade practice that is prohibited by Louisiana Revised Statute 51:1405. Therefore, Texaco's motion in limine which seeks to prohibit the introduction of evidence of Cason's intent to sublease the station is hereby denied.

---

27. See the discussion of the good faith requirement pursuant to PMPA in Part I of this opinion.

28. Senate Report, S.Rep. No. 95–731, 95th Cong.2d Sess. 37, reprinted in 1978 U.S.Code Cong. & Ad.News 873, 895–896.

29. See Brief in Support of Texaco, Inc.'s Motions in Limine, p. 6.

Therefore, for the foregoing reasons:

IT IS ORDERED that the motion of Texaco, Inc. for summary judgment on plaintiff's claims filed pursuant to the Petroleum Marketing and Practices Act, 15 U.S.C. §§ 2801–2806, be and it is hereby DENIED.

IT IS FURTHER ORDERED that the motion of Texaco, Inc. for summary judgment on plaintiff's claims filed pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, Louisiana Revised Statute 51:1401–1418, be and it is hereby DENIED.

IT IS FURTHER ORDERED that the motion of Texaco, Inc. for summary judgment on the issue of the breach of fiduciary duty owed by Texaco to the plaintiff be, and it is hereby GRANTED.

IT IS FURTHER ORDERED that Texaco, Inc's motion in limine seeking to prohibit the introduction of evidence concerning alleged unfair trade practices occurring prior to August 30, 1982, be and it is hereby DENIED.

IT IS FURTHER ORDERED that Texaco, Inc.'s motion in limine seeking to prohibhibit the introduction of evidence concerning an alleged nationwide plan of Texaco to eliminate independent retailers be, and it is hereby DENIED.

IT IS FURTHER ORDERED that Texaco, Inc.'s motion in limine seeking to prohibit the introduction of evidence concerning the plaintiff's intent to sublease the retail marketing outlet be, and it is hereby DENIED.