Charles J. **PORTALUPPI,**
Plaintiff-Appellant,

v.

**SHELL OIL COMPANY,**
Defendant-Appellee.

No. 88-2528.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1989.

Decided March 9, 1989.

Warren Glenn Stambaugh, Arlington, Va., for plaintiff-appellant.

Maureen Ellen Mahoney (Theodore B. Heinrich, Arlington, Va., Latham & Watkins, on brief), for defendant-appellee.

Before WIDENER and SPROUSE, Circuit Judges, and HENDERSON, United States District Judge for the District of South Carolina, sitting by designation.

SPROUSE, Circuit Judge:

The litigation underlying this appeal arose out of the cancellation of Charles J. Portaluppi's franchise to operate a Shell Oil Company gasoline station in Woodbridge, Virginia, after Portaluppi pled guilty in July 1987 to a criminal charge of possession of cocaine and marijuana in a Virginia state court. Shell notified him of the cancellation, indicating that the conviction was for a crime involving moral turpitude and was a "relevant event" included as grounds for termination both in the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2841, and in the lease which the parties had executed.

Portaluppi, contending that Shell's termination of the franchise agreement violated the PMPA and the terms of the franchise agreement, brought an action for damages and injunctive relief in the district court. After Shell's answer, Portaluppi sought partial summary judgment on one count of the complaint and Shell moved for summary judgment on all counts. In support of its motion, Shell filed the deposition of a police officer and the affidavits of three of its officials. Portaluppi, on the other hand,

relied solely on the complaint and answer. The district court granted summary judgment to Shell, holding that the franchise cancellation was proper because it came within the PMPA's grounds for cancellation, *viz.*, that Portaluppi's guilty plea comprised a conviction of "a crime involving moral turpitude" and was "an event relevant to the franchise agreement which warrants termination." *Portaluppi v. Shell Oil Co.*, 684 F.Supp. 900, 902 (E.D.Va. 1988). Without deciding the question of whether simple possession of a narcotic is a crime involving moral turpitude, we affirm on the ground that the guilty plea was "an event relevant to the franchise agreement which warrants termination."

On November 10, 1986, a newspaper serving the Woodbridge, Virginia area reported that Portaluppi's house had been searched on November 8 and that he had been arrested and charged with the possession of cocaine and possession of marijuana with intent to distribute. The newspaper reported that "[c]ocaine, chemicals, and instruments used in producing the popular drug 'crack' were seized from [Portaluppi's] home." A copy of the newspaper article was forwarded to Shell's district sales manager by a Shell employee shortly thereafter. In connection with the search of Portaluppi's home, the police also confiscated sixteen guns, including a fully automatic machine gun.

Shell's territorial sales representative for Portaluppi's area averred in his affidavit that in the months following Portaluppi's arrest, he observed that Portaluppi had difficulty communicating with him in a rational and logical fashion and had otherwise acted erratically and paranoid; he cited examples of that behavior. He also stated that, during that period, there was a substantial turnover of the station's employees, that on several occasions the station was closed during regular business hours, and that Portaluppi experienced financial problems which resulted in limitations on the amount of fuel supply he had available for sale. Based on these facts and on a conversation with a local police officer, the Shell official concluded that Portaluppi was conducting station business under the influence of narcotics.

Shell's former territorial manager averred in his affidavit that, in the fall of 1986, one of the station's employees told him that Portaluppi appeared to be a heavy user of drugs and was coming to the station under the influence of drugs. He was also advised by the employee that Portaluppi had on one occasion carried a firearm to the station and acted in a threatening manner, causing the employee concern for his personal safety. A Prince William County Police Officer, Kim D. Chinn, testified in a deposition that observations of other officers led to a departmental concern for the safety of police officers who might respond to complaints regarding the station, as Chinn had once done. Chinn testified that on one occasion, when the police arrived, Portaluppi was armed with a handgun, and that both his business and his residence addresses were marked in police files with a hazard identification, "meaning that . . . all officers responding there were advised that that could be a potentially hazardous situation." The officer effecting that notation remarked that Portaluppi was psychologically unstable, was a drug user, and was usually armed with a firearm. In response to a check fraud complaint by Portaluppi on December 16, 1986, the police report reflected the officer's comment that Portaluppi was "very mentally unstable . . . and he [had] a . . . .35 [sic] revolver on the desk" and that he was "talking in circles, and experienced very abrupt mood changes." The hazard identification information was recorded on December 17, 1986, apparently by the same officer investigating the check fraud report.

After his arrest, Portaluppi was indicted in May 1987 for possession of cocaine, and possession of marijuana with intent to distribute, and in July 1987 pled guilty to reduced charges of possession of cocaine and marijuana. On September 25, 1987, he was sentenced to a suspended prison term of five years and placed on probation for four years. Shell received notice of the sentence shortly thereafter and notified Portaluppi of the termination by a letter dated October 8, 1987. In the meantime,

on June 3, 1987, Portaluppi had written Shell stating that, "[u]pon the advice of my doctor and of my lawyer, I have decided to take steps to transfer my rights and responsibilities under the dealership agreement" and that, subject to Shell's approval, he would transfer the franchise agreement to his father, Charles J. Portaluppi, Sr. Shell disapproved this transfer on October 9, 1987.

The PMPA provides in general that a franchisor cannot terminate a gasoline station's franchise except for good cause. The purpose of the act, of course, is to protect "franchisees from arbitrary or discriminatory termination or non-renewal of their franchises," S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S. Code Cong. & Admin.News 873, 874, and to combat the practice of some oil companies threatening termination or nonrenewal in order to coerce dealers into compliance with their marketing policies. *Jimenez v. BP Oil, Inc.,* 853 F.2d 268, 271 (4th Cir. 1988).

The PMPA, however, recognizes legitimate grounds for termination. It provides, in pertinent part:

[T]he following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

. . . .

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if . . . the franchisor first acquired . . . knowledge of such occurrence—

(i) not more than 120 days prior to the date on which notification . . . is given. . . .

15 U.S.C.A. § 2802(b)(2) (1982).

Section 2802(c) provides, in pertinent part:

As used in subsection (b)(2)(C) . . ., the term "an event which is relevant to . . . the franchise relationship . . ." includes events such as—

. . . .

(12) conviction of the franchisee of any felony involving moral turpitude.

In our view, if Shell's termination action were justified under the PMPA, it would also satisfy the parties' agreement. We discuss, therefore, only the validity *vel non* of Shell's termination action as it is governed by the PMPA. The district court, in granting summary judgment to Shell, held that the possession of cocaine is a crime involving moral turpitude and, alternatively, that even if "mere possession" of cocaine is not a crime involving moral turpitude, such crime is an "event relevant to the franchise agreement which warrants termination." Portaluppi contends here that his conviction was neither a crime involving moral turpitude nor an event relevant to the franchise agreement that warrants termination. We consider the latter contention.

The PMPA requires that notice of a termination be given within 120 days of when the franchisor "first acquired actual or constructive knowledge" of the occurrence justifying termination. Portaluppi notes, correctly, that Shell, in the termination notice, assigned *only* the conviction as grounds for termination and did not refer to Portaluppi's conduct or the circumstances resulting in his indictment and guilty plea. Further, he emphasizes that Shell was not even aware of the information contained in the police officer's deposition at the time of the termination. He notes correctly that the district court held that his personal conduct *per se* could not be considered, 684 F.Supp. at 905–6 n. 17; *see* 15 U.S.C.A. § 2804(c)(3)(A) ("Notification . . . shall contain . . . a statement of intention to terminate . . ., together with the reasons therefor."), but further contends that the district court erred in considering his personal conduct for *any* purpose.

The gravamen of Portaluppi's argument is that his narcotics conviction *per se* was not relevant to his operation of the gasoline service station to an extent which would make termination reasonable. He argues that the isolated incident of conviction did not affect his relationship with any custom-

er or business associates, that it could not affect the way in which he operated the station, and that it did not damage Shell in any way. He also argues that, since the PMPA provides that conviction of a felony involving moral turpitude is a reasonable basis for termination, conviction of any other felony cannot alone be a ground for termination. Portaluppi's arguments reduce the issue to whether his conviction *per se* was a relevant event warranting termination. There is simply no merit to his argument that it was not.

■ In our view, conviction of the possession of cocaine in and of itself can be considered to relate to the operation of a gasoline service station in such a way as to justify the franchisor to terminate the franchise agreement under the provisions of § 2802(b)(2)(C). As the district court pointed out, the logic supporting that conclusion is inherent in the general circumstances observed from the actual social horrors that are daily paraded through the courts that try and review criminal narcotic charges. Further exploration of the notorious consequences of "hard narcotic" use is, in our view, unnecessary and would be an exercise in the superfluous. At the risk of "gilding the lily," we note, however, that, in our view, the district court properly considered the evidence of Portaluppi's conduct and activities as evidence of the likely effect of his conviction upon the operation of his business in concluding that his conviction was relevant to the franchise agreement. Since, in our view, the district court correctly held that Portaluppi's conviction was an event relevant to the franchise relationship as a result of which termination is reasonable, we need not consider the question of whether cocaine possession is a crime involving moral turpitude.

■ Portaluppi also contends that Shell violated the provisions of the Virginia Petroleum Products Franchise Act, which provides that "[n]o transfer or assignment of a franchise by a dealer to a qualified transferee or assignee shall be unreasonably disapproved by the producer or refiner," Va.Code Ann. § 59.1–21.11.5 (Repl.1987), when it disapproved the proposed transfer

to his father. Again, we disagree. In the first place, Shell terminated the agreement on October 8, 1987, effective January 18, 1988. When it disapproved the transfer on October 9, 1987, there was little left to transfer. In any event, Portaluppi's father, who had no previous service station experience, stated in response to Shell's inquiry concerning whether he would operate the station independently of his son that it was his intention to try to retain the franchise for the benefit of his son.

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.