Edward I. GLENN and Robert
T. Glenn, Plaintiffs,

v.

EXXON COMPANY, U.S.A., Defendant.

Civ. A. No. 89–299 LON.

United States District Court,
D. Delaware.

April 29, 1992.

Joseph E. Funk, Wilmington, Del., for plaintiffs.

James F. Harker of Herlihy, Harker & Kavanaugh, Wilmington, Del. (William R. O'Brien, (argued) and Gregory W. Stevens of Howrey & Simon, Washington, D.C.; William R. Hurt, of Exxon Co., U.S.A., Houston, Tex., of counsel), for defendant.

## OPINION

LONGOBARDI, Chief Judge.

This is an action for damages brought by the Plaintiffs Edward I. Glenn and Robert

T. Glenn against Exxon Company, U.S.A. ("Exxon"). The Plaintiffs allege that the Defendant unreasonably withheld its consent to assignment, transfer or sale of the Plaintiffs' automobile service station lease to a third party, thereby violating 6 Del.C. § 2909(5). Plaintiffs originally filed suit in the Superior Court of Delaware. Docket Item ("D.I.") 1, Exhibit ("Ex.") A.

The Plaintiffs are both residents of the State of Delaware. The Defendant is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in the State of New York. The amount in controversy exceeds $50,000. The Defendant removed this action pursuant to 28 U.S.C. §§ 1441, 1446. D.I. 1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. FACTS

On April 24, 1987, the Plaintiffs and Exxon entered into a Retail Service Station Lease and Sales Agreement (hereinafter "Lease and Sales Agreement"). This document provided for the lease of a service station and the sale of Exxon-brand motor fuel to the Plaintiffs who, in turn, would sell the motor fuel to the consuming public. The agreement between the parties is known as a "franchise." The franchise was effective for the period May 1, 1987, to May 1, 1990. D.I. 9 at 2; D.I. 10 at 1.

From approximately July 6, 1988, to July 8, 1988, the Plaintiffs sold non-Exxon gasoline to customers without indicating that the product was not Exxon fuel. This constituted a violation of the terms of the franchise. By letter dated July 19, 1988, Exxon notified the Plaintiffs of its intention to terminate the franchise relationship effective October 25, 1988, for the following reasons: (1) selling non-Exxon motor fuel as Exxon branded motor fuel; (2) willfully mislabelling motor fuel; (3) willfully misbranding motor fuel; and (4) knowingly failing to abide by applicable state and federal laws. D.I. 9 at 2–3; D.I. 10 at 1–2. See also D.I. 9A, Appendix ("App.") E. Exxon later extended the effective date of the termination to November 30, 1988, to permit review through Exxon's grievance procedures. D.I. 9 at 3; D.I. 10 at 2.

On or about September 6, 1988, Plaintiff Edward Glenn entered into an agreement for sale of the Exxon station with Ralph V. Estep. D.I. 9 at 3; D.I. 1, Ex. A. The agreement, by its terms, was contingent in part upon Mr. Estep obtaining a satisfactory lease from Exxon. D.I. 1, Ex. A. By letter dated September 15, 1988, the Plaintiffs notified Exxon of their intention to sell their franchise to Mr. Estep. D.I. 9 at 4; D.I. 9A, App. H. See also D.I. 10 at 2. In response to the Plaintiffs' letter, Exxon notified them by letter dated October 19, 1988, that it would not consent to an assignment of the franchise to Mr. Estep because its contracts with the Glenns were to be canceled as of November 30, 1988. D.I. 9 at 4; D.I. 9A, App. I. See also D.I. 10 at 2.

Exxon has moved for summary judgment, D.I. 8, asserting two grounds. First, Exxon asserts that Subchapter I of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2841, preempts the Plaintiffs' claim under 6 Del.C. § 2909(5). D.I. 9 at 1–10. Second, Exxon argues that even if the PMPA does not preempt the Plaintiffs' claim, Exxon could not have acted unreasonably in withholding its consent to the assignment since the Plaintiffs attempted to assign more than the franchise they possessed. D.I. 9 at 11–13.

In response to Exxon's motion for summary judgment, the Plaintiffs do not dispute that they sold non-Exxon products or that the products were mislabelled as Exxon products. The Plaintiffs assert that "[t]he record is not specifically clear whether Robert Glenn ordered Exxon gasoline, or not" but admit that "in fact the gasoline delivered and ultimately sold by plaintiffs was tested by Exxon and turned out to be non-Exxon products." D.I. 10 at 2–5. The Plaintiffs further admit that selling mislabelled non-Exxon products constituted a violation of the lease. Id. Plaintiffs are not disputing the legality of Exxon's termination of their lease. Rather, they argue that the PMPA does not preempt section

2909(5). D.I. 10 at 3. They further assert that the Defendant failed to act in "subjective good faith" and unreasonably withheld consent to assignment of their lease "by not even acknowledging" an application allegedly submitted to Exxon by Mr. Estep.[1] *Id.* at 5–8. They urge that a factual inquiry is required to determine the "subjective intent of the defendant" thereby precluding summary judgment. *Id.*

## II. LEGAL STANDARD

 Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality is determined by the substantive law that governs the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Following a determination that no genuine dispute of material facts exists, the moving party must demonstrate that it is entitled to judgment as a matter of law.

 Once the moving party has made and supported its motion, the "adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but

... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Any doubts as to the existence of genuine issues of fact will be resolved against the moving party and all inferences to be drawn from the material it submits will be viewed in the light most favorable to the party opposing the motion. *Norfolk Southern Corp. v. Oberly*, 632 F.Supp. 1225, 1231 (D.Del.1986) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)), *aff'd*, 822 F.2d 388 (3rd Cir.1987). If the evidentiary record supports a reasonable inference that the ultimate facts may be drawn in favor of the responding party, then the moving party cannot obtain summary judgment. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 258 (3rd Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

### A. *The Petroleum Marketing Practices Act*

Congress passed Subchapter I of the PMPA, 15 U.S.C. §§ 2801–2806 because of the overwhelming disparity in bargaining power between petroleum companies (the franchisors) and franchised distributors and retailers (the franchisees). S.Rep. 731, 95th Cong., 2d Sess. 15–19, *reprinted in* 1978 U.S.Code Cong. & Admin.News 873, 873–77. Subchapter I is intended to protect franchisees "from arbitrary or discriminatory termination or nonrenewal of their franchises" by prohibiting termination or nonrenewal of a franchise unless it is "based upon a ground specified or described in the legislation and is executed in accordance with the notice requirements of

---

**1.** The Plaintiffs have included among their exhibits to their memorandum of law in opposition to Exxon's Motion for Summary Judgment a letter from Estep to James F. Chryst, an employee of Exxon, dated September 12, 1988. The letter apparently transmits his application for a lease. D.I. 10A, App. A. The Plaintiffs point out that in a deposition, William K. Meredith, a District Sales Manager, stated that he did not receive an application from Estep. D.I. 10 at 5; D.I. 10A, App. B. Interestingly, Estep's

letter indicates that he did not even copy Meredith when sending the application to Chryst. D.I. 10A, App. A. Neither party has indicated whether Chryst acknowledged receiving the application, although a copy of a return receipt form bears the signature "James F. Chryst" in the block designated for the signature of the addressee. *See id.* In effect, the record indicates that Exxon, through Chryst, received notice of the attempted assignment.

the legislation." Senate Report at 15, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 874. Congress, finding in existence "an uneven patchwork of rules governing franchise relationships" in the states, determined that "a single, uniform set of rules governing the grounds for" and notice requirements for termination or nonrenewal was essential. Senate Report at 19, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 877. To provide this necessary uniformity, Congress enacted a section that specifically preempts state laws dealing with the termination and nonrenewal of franchise relationships that are not the same as the provisions of the PMPA. Senate Report at 16, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 874.

A franchise is defined in the PMPA as "any contract ... between a refiner and a retailer ... under which a refiner or distributor ... authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner...." 15 U.S.C. § 2801(1)(A)(ii). A "franchise" includes a contract that authorizes a retailer to occupy leased marketing premises to be used in connection with the sale of the motor fuel. *Id.* § 2801(1)(B)(i). A "refiner" is defined as "any person engaged in the refining of crude oil to produce motor fuel, and includes any affiliate of such person." *Id.* § 2801(5). A "retailer" is defined as "any person who purchases motor fuel for sale to the general public for ultimate consumption." *Id.* § 2801(7). A "leased marketing premise" means a "marketing premise owned, leased, or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel." *Id.* § 2801(9). A review of the lease between Exxon and the Glenns reveals that the franchise at issue in this case is subject to the provisions of the PMPA. *See* D.I. 9A, App. B.

The PMPA permits a franchisor to terminate a franchise or refuse to renew a franchise relationship upon a "failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship...." *Id.* § 2802(b)(2)(A). The franchisor may also terminate or decide not to renew a franchise relationship based upon the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable...." *Id.* § 2802(b)(2)(C). "[W]illful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee" constitutes such an event. *Id.* § 2802(c)(10).[2] Finally, the PMPA section that deals with the relationship of the statutory provisions of Subchapter I to state and local laws provides:

(a) To the extent that any provision of this subchapter applies to the termination ... of any franchise ..., no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation ... with respect to termination ... of any such franchise ... unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

(b) Nothing in this subchapter authorizes any transfer or assignment of any franchise or prohibits any transfer or assignment of any franchise as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise.

15 U.S.C. § 2806.

B. *Preemption*

■ The Defendant asserts that the Plaintiffs' claim under 6 Del.C. § 2909(5) is

---

**2.** Further, the sales agreement between the parties itself permitted Exxon to terminate the contract "[i]f Buyer engages in adulteration, mislabeling or misbranding of motor fuels ..." D.I. 9A, App. B, Sales Agreement, § 21(b)(xii). The Retail Service Station Lease contains a similar provision: "This lease may be terminated by Exxon ... if there occurs any other circumstance under which termination of a franchise is permitted under the [PMPA]." D.I. 9A, App. B, Lease, § 14(b)(xiv).

preempted both because the PMPA, at 15 U.S.C. § 2806(a), expressly preempts all state laws that are inconsistent with the PMPA's termination provisions, D.I. 9 at 6, and also because enforcement of section 2909(5) would "stand[ ] as an obstacle to the accomplishment and execution" of the objectives of Congress in enacting the PMPA. *Id.* at 9 (citing *Hines v. Davidow-itz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). The relevant portion of section 2909(5) provides "No party to a marketing agreement with a retail dealer shall unreasonably withhold his consent to any assignment, transfer or sale of the marketing agreement...."

Determination of whether the PMPA preempts 6 Del.C. § 2909(5) is guided by the Supremacy Clause of the United States Constitution, Article VI, clause 2, and by well-established principles enunciated by the United States Supreme Court. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984). Federal law preempts state law or regulation in the following circumstances:

> [W]hen Congress, in enacting a federal statute, expresses a clear intent to preempt state law, ... when there is outright or actual conflict between federal and state law, ... where compliance with both federal and state law is in effect physically impossible, ... where there is implicit in federal law a barrier to state regulation, ... where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, ... or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (citations omitted).

The Court of Appeals for the Third Circuit has discussed the issue of preemption in *O'Shea v. Amoco Oil Co.,* 886 F.2d 584 (3rd Cir.1989). The facts of *O'Shea* merit some description. In that case, the plaintiff, in December, 1985, purchased a leasehold from and entered into a one-year franchise agreement with Amoco that required the station to operate on a twenty-four hour basis. *Id.* at 586. In February, 1986, an ordinance became effective in the township in which the franchise was located that prohibited the sale of gasoline between midnight and six a.m. O'Shea and Amoco filed suit in New Jersey Superior Court challenging the constitutionality of the ordinance. Amoco did not require O'Shea to operate on a twenty-four hour basis as long as the ordinance was in effect. *Id.*

In December, 1986, O'Shea and Amoco renewed the franchise agreement under the same terms until November 30, 1989. In March, 1987, the state court determined that the ordinance was unconstitutional. In May, 1987, Amoco informed O'Shea that he must resume twenty-four hour service. *Id.* at 587. O'Shea filed suit in New Jersey Superior Court seeking to enjoin Amoco from enforcing the requirement for two reasons; (1) the agreement was signed while the township ordinance was in effect; and (2) in response to his objection to inclusion of the requirement while the ordinance was in effect, an Amoco representative had indicated that the agreement would be corrected. The state court ultimately entered judgment for Amoco. *Id.* Before the state court had rendered a decision, however, Amoco informed O'Shea in writing that the franchise agreement would be terminated effective October 30, 1987. Amoco alleged in this letter that O'Shea had breached the twenty-four hour provision of the agreement and asserted that this "constituted a breach of a term of material significance and a failure by O'Shea to exercise good faith efforts to carry out the provisions of the franchise agreement." *Id.* O'Shea did not appeal the decision of the New Jersey Superior Court but filed a suit in federal court alleging that the termination violated the PMPA.

In District Court, O'Shea asserted that the twenty-four hour requirement violated state law and was unenforceable. *Id.* at 589. The District Court judge held that this claim was based upon a state law relating to franchise termination and held it to be preempted by the PMPA. *Id.* On

appeal, the Court of Appeals held that O'Shea was barred from raising the state claim under the doctrine of claim preclusion because it was "closely related to the claims O'Shea brought in his state court suit." *Id.* at 590.

O'Shea put forth four reasons that the state law claim should not be barred despite the similarity of the claim to the claims brought in state court. *Id.* at 591. The only argument pertinent to the case before this Court is that:

> federal courts have exclusive jurisdiction over PMPA claims [and] ... at the moment of termination [the] state law claims were preempted, and that, at that point, the PMPA became [O'Shea's] exclusive remedy. Based on this reasoning [O'Shea] contends that after the notice of termination was received, the New Jersey court no longer had subject matter jurisdiction over his claims. O'Shea concludes that the "Superior Court litigation must be deemed an aborted proceeding, in which no claim or issue had been the subject of a valid and binding determination," and therefore that there can be no entire controversy preclusion based on the state proceeding.

*Id.* at 592. The court held that O'Shea's "argument fails because at least one of the causes of action that he brought in his state court suit was not preempted by the PMPA." *Id.* The court found that O'Shea's claims in state court were straightforward contract claims and specifically explained that:

> the PMPA preempts only those state laws that regulate the "grounds for, procedures for, and notification requirements with respect to termination," to the extent that such laws are not the same as the PMPA.... The law involved in O'Shea's contract claims in no way involved "procedures for" or "notification requirements with respect to" termination. And, with respect to the grounds for termination, we believe that PMPA only preempts state laws that lim-

it the permissible substantive reasons that a petroleum franchisor can terminate a franchisee.... There is no reference to any legislative intent to preempt the general common law of contract, even to the extent it may become involved in a PMPA action.

*Id.* at 592–93 (citations omitted).

The Court does not believe, however, that *O'Shea* requires a finding that the Plaintiffs' claim under the first clause of 6 Del.C. § 2909(5)[3] is *not* preempted by the PMPA. The first clause of section 2909(5) does not "regulate the ... 'procedures for,' or 'notification requirements with respect to termination.' " *See id.* Nor does the prohibition against unreasonably withholding consent to assignment, on its face, "limit the permissible substantive reasons that a petroleum franchisor can terminate a franchisee." *Id.* at 593. Nevertheless, the legislative history of the PMPA suggests that preemption might be appropriate in circumstances similar to those before the Court. Of particular note is the following statement in the Senate Report:

> the preemption provisions of the legislation are limited to provisions of State law dealing with termination or nonrenewal of franchise relationships. The legislation is not intended to authorize or to prohibit franchise assignments; instead, as a general rule, assignability of franchises is a matter left to State law. However, there is an area in which Federal termination provisions under this legislation and State-granted rights of assignability of a franchise may conflict. It is intended that the harmonizing of these competing interests be left to judicial balancing of competing equities on a case-by-case basis....
>
> For example, it is not intended that a franchisee may avoid the consequences of his own conduct which gave rise to a notice of termination or nonrenewal by merely assigning his franchise after having been notified by the franchisor of the franchisor's intent to terminate or fail to

---

**3.** The second clause of section 2909(5) provides that "a manufacturer [may not] unreasonably refuse to renew a marketing agreement." It is unnecessary for the Court to decide whether the PMPA preempts this clause of the section.

renew. Such a result would not be countenanced under general principles of equity.... Many other examples ... may be postulated.... [T]he legislation leaves to the courts the task of resorting to traditional principles of equity to maximize attainment of the competing statutory objectives consistently with the supremacy clause of the Constitution and the purposes of the Federal legislation.

Senate Report at 42–43, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 901.

In this case, it is undisputed that the Plaintiffs were attempting to sell or assign more than the two months remaining on their lease. Both Plaintiffs testified at their depositions that they did not believe Estep would pay $93,000 (the purchase price for the transfer of the Exxon lease to Estep) for the short time remaining on the lease. *See* D.I. 9A, App. C at A–30–31; App. D at A–50, A–55. Moreover, the Plaintiffs do not dispute that their agreement with Estep was contingent upon his obtaining a satisfactory lease from Exxon.

The Plaintiffs' action, in effect, amounts to an attempt to "breathe new life" into their terminated franchise. Their attempted application of section 2909(5) would interfere with and limit "the permissible substantive reasons" for termination because it would operate to nullify Exxon's termination of their license. Moreover, the Glenns' proposed application of section 2909(5) would permit them to "avoid the consequences of [their] own conduct which gave rise to a notice of termination ... by merely assigning [their] franchise after having been notified by the franchisor of the franchisor's intent to terminate...."[4] Senate Report at 42–43, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 901. The Court believes this to be precisely the type of circumstance that Congress sug-

gested should not be "countenanced under general principles of equity." *Id.* Since the Plaintiffs attempted application of section 2909(5) would stand "as an obstacle" to Congress's objective of providing a "uniform set of rules" for franchise termination, the claim under section 2909(5) is preempted. *Cf. Humboldt Oil Co. v. Exxon Co., U.S.A.,* 823 F.2d 373, 375 (9th Cir. 1987) (California law permitting treble damages for refusal to consent to assignment when "assignment would effectively avoid termination is ... obstacle" to Congress's objectives), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1575, 99 L.Ed.2d 890 (1988); *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1116–17 (D.N.J.1991) (franchisee raised claim of breach of fiduciary duty as defense to franchisor's assertion that termination was proper; claim is preempted because it would affect whether termination was permitted); *Esquivel v. Exxon Co., U.S.A.,* 700 F.Supp. 890 (W.D.Tex.1988) (state law claims of fraud and breach of fiduciary duty preempted because they have "obvious and direct effect of seeking to continue a relationship validly terminated under the PMPA").

### C. Attempted Assignment, Transfer or Sale of Leasehold

■ Even if the Plaintiffs' attempted application of section 2909(5) were not preempted, Exxon's refusal to consent to the assignment was not unreasonable. With respect to this issue, the Court reiterates that only two factual matters appear to be in dispute in this case. The first is whether Robert Glenn ordered non-Exxon gasoline. This dispute is immaterial, however. The issue no doubt might affect the outcome of a suit concerning the legality of the termination of the lease. The suit before the Court, however, does not challenge the termination of the lease.[5]

---

4. The Court does not mean to imply that the first clause of section 2909(5) would always be preempted by the PMPA. Rather, the Court's holding is limited to the facts before it, where the Plaintiffs have attempted to assign more than the short period of time remaining on their lease. If the Plaintiffs had attempted to assign only the period remaining on their lease, application of section 2909(5) probably would not

have interfered with the franchise termination. In that case, the PMPA would not preempt application of the state law.

5. The Court notes that the Plaintiffs have asserted that "the PMPA has been interpreted to mandate 'subjective good faith.'" D.I. 10 at 4 (citing *Cason v. Texaco, Inc.,* 621 F.Supp. 1518 (M.D.La. 1985); *Munno v. Amoco Oil Company,* 488 F.Supp. 1114 (D.Conn.1980)). Both cases cited

It is a general principle of contract law that an assignment operates to transfer to the assignee *only* those rights and interests possessed by the assignor. *See* Restatement (Second) of Contracts § 336 comment b (1981). *Cf. In re Herbert*, 806 F.2d 889, 893 n. 6 (9th Cir.1986) (for franchise to be assumable under Chapter 11 of bankruptcy code, agreement must have been executory contract when Chapter 11 petition filed; even if executory, agreement had duration of only two days and would be assignable "only to the extent of its foreshortened duration"); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.) (when PMPA termination notice was sent providing franchisees 90 days notice, all that remained of dealership contract was the 90 days; filing a chapter 11 bankruptcy petition after receipt of the termination notice does not expand rights beyond the 90 days), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Hartford Accident & Indem. Co. v. Long*, Del.Ch., 245 A.2d 800, 803 (1968) (contractor can assign no more than he possesses); Restatement (Second) of Contracts § 336(1) ("By an assignment the assignee acquires a right against the obligor only to the extent that the obligor is under a duty to the assignor").

In the instant case, when the Plaintiffs attempted to assign their franchise to Estep in September, 1988, the Glenns possessed a franchise that was to terminate effective October 25, 1988, later extended to November 30, 1988. *See* D.I. 9A, App. E, F. The Plaintiffs could assign only the period remaining. As noted above, both Plaintiffs have testified that they did not believe Estep would pay $93,000 (the purchase price for the transfer of the Exxon lease to Estep) for the short time remaining on the lease. *See* D.I. 9A, App. C at A–30–31; App. D at A–50, A–55.

There is no dispute that the Plaintiffs' agreement with Estep was contingent upon Estep obtaining a satisfactory lease from Exxon. Section 2909(5) of title 6 of the Delaware Code, however, does not require Exxon to enter into new agreements with applicants selected by terminated franchisees so that the latter can effect a valid assignment. Section 2909(5) merely prohibits a franchisor from unreasonably withholding consent to the assignment of existing rights.

In support of their argument that the Defendant's refusal to consent to assignment was unreasonable, the Glenn's assert that Exxon failed to acknowledge Estep's application but that argument does not help the Plaintiffs. The Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. at 1356. *See also* Fed. R.Civ.P. 56(e) advisory committee's note (purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Exxon has continuously asserted its right to terminate the lease and it has never wavered on not approving the assignment to Estep. The Court's decision is based on this record. It is undisputed that the Defendant at least knew of the Glenns' intent to assign their lease to Estep and it is undisputed that the attempted assignment occurred after the notice of termination. When Exxon refused to give consent to an assignment, there was "little left to transfer." *See Portaluppi v. Shell Oil Co.*, 869 F.2d 245, 248 (4th Cir.1989). Furthermore, it is undisputed that the Plaintiffs attempted to assign more than the period remaining on their lease. *Cf. Portaluppi*, 869 F.2d at 248 (not unreasonable to disapprove transfer of franchise that would terminate in three months; in any event, proposed as-

---

involved challenges under a PMPA provision that imposes a good faith requirement on a franchisor's decision to make changes or additions to a franchise relationship. *See Cason*, 621 F.Supp. at 1521–22 (citing 15 U.S.C. § 2802(b)(3)); *Munno*, 488 F.Supp. at 1117–18 (same). The Court does not read these cases so broadly as to graft onto the statute a good faith

requirement for terminations pursuant to sections 2802(b)(2)(A) or (C) and will not read a good faith requirement into the provisions absent clear congressional intent. At any rate, the Court does not read the Plaintiffs' complaint as challenging Exxon's termination decision or as alleging that the decision was not made in good faith.

signee intended to retain franchise for benefit of assignor who had been lawfully terminated).

IV. CONCLUSION

The Court, for the reasons stated above, concludes that there are no genuine disputes of material fact and that the Defendant Exxon is entitled to judgment as a matter of law.