United States Court of Appeals,

Fifth Circuit.

No. 90–4686.

DELTA TRUCK & TRACTOR, INC., Plaintiff–Appellant, Cross–Appellee,

v.

J.I. CASE COMPANY, Tenneco, Inc., and Navistar International Transportation Corp. f/k/a International Harvester Company, Defendants–Appellees, Cross–Appellants.

Oct. 29, 1992.

Appeals from the United States District Court for the Western District of Louisiana.

Before THORNBERRY, HIGGINBOTHAM, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

In this Louisiana diversity case, Plaintiff–Appellant Delta Truck & Tractor, Inc. (Delta) appeals the district court's adverse summary judgments dismissing all but one of Delta's claims. Also appealed is the district court's directed verdict dismissing Delta's remaining claim following a bench trial.

Delta, in its suit against Defendants–Appellees, J.I. Case Company, now a wholly-owned subsidiary of Tenneco, Inc. (Case), and International Harvester Company, now Navistar International Transportation Corp. (IH), sought damages for wrongful termination of its Dealership Agreement with IH following IH's in globo transfer of its farm implement manufacturing and distribution business to Case. In our de novo review of the issues determined on summary judgment, we reach conclusions opposite those reached by the district court, particularly that court's characterization of the transfer transaction between IH and Case as one in which IH went out of the farm implement business. We conclude instead that IH in fact sold its farm implement group or division to Case as a unitary, going business. For the reasons set forth below, we reverse the summary judgments and the directed verdict of the district court; render judgment in favor of Delta against IH and Case in solido (jointly and severally) on Delta's breach of contract and third party beneficiary claims, and against IH on Delta's claim against IH for breach of its duty of good faith; and remand the case to the district court for the sole purpose of determining the quantum of damages, interest and costs, including attorneys' fees to

the extent appropriate, owed to Delta by IH and Case, as well as such ancillary matters as may be required for the court to make such determinations.

I

FACTS

In 1962, Delta, a Louisiana corporation, became a franchise dealer of IH, itself an integrated manufacturer and distributor of farm implements and agricultural equipment. After meeting specified qualifying standards, Delta became a "XL" dealer of IH in 1976 and obtained a new dealer agreement with IH consistent with that status.

The new agreement (the Dealer Agreement), executed April 7, 1977, is the contract under consideration here. Among other things, the Dealer Agreement sets forth the conditions under which it could be terminated by either or both of the parties: 1) mutually, by written consent of both Delta and IH at any time; 2) unilaterally by Delta upon furnishing four months' advance written notice to IH, with or without cause; and 3) unilaterally by IH upon furnishing six months' advance written notice to Delta, *but only for cause.* For IH to have cause to terminate, either (a) Delta must (i) breach one of its obligations under the Dealer Agreement, (ii) be advised by IH of such breach, (iii) be given a reasonable opportunity by IH to rectify the breach, and (iv) fail to do so in a timely manner; or (b) IH must determine that a sufficient market for its products no longer exists *in Delta's trade area.* (There is no contention by any party to this litigation that either of IH's terminating causes as set forth in the Dealer Agreement ever occurred.) Notably absent from the exclusive list of causes that would give IH the right to terminate the Dealer Agreement unilaterally, unrelated to Delta's breach of its obligations under the agreement, is the total cessation by IH of its farm implement and agricultural equipment business everywhere or the in globo sale or exchange of that business.

Section 2 of the Dealer Agreement states that the contract covers all agricultural equipment identified on IH's price list. That section acknowledges that IH has the right, without incurring liability to the dealer, to make additions to and deletions from the price list, including deletions

resulting from discontinued production of a line or lines of agricultural equipment.[1] Notably absent from section 2 is any express or implied right of IH unilaterally to terminate all lines of agricultural equipment, i.e., to exit that market altogether, without incurring liability to the dealer.

For many years both before and after becoming a wholly-owned subsidiary of Tenneco, Inc., J.I. Case Company, Inc. competed directly with IH as a manufacturer and distributor of agricultural equipment. As will be noted, Case competed directly with IH in Delta's trade area, primarily through the authorized Case dealer for that area, Scott Truck and Tractor.

As a result of a general recession in the farm economy, IH suffered substantial losses in its agricultural equipment group from 1980 through 1984. On November 26, 1984, IH and Case executed a contract (the Purchase Agreement) in which IH agreed to sell and Case agreed to buy all assets of IH's farm implement and agricultural equipment manufacturing and distribution business. Upon consummation of its purchase from IH, Case took over the manufacture of IH products, calling that line of agricultural equipment "Case–International."

Prior to the IH sale to Case, each company had manufactured and distributed its own agricultural equipment through its own network of independent dealers. Delta was such a dealer for IH. Both IH and Case recognized that Case's purchase of IH's farm implement group or division would produce a number of "conflict areas"—common geographical trade areas in which a Case dealership and an IH dealership competed. Case therefore decided that, immediately following its purchase of IH's farm implement business, it would offer a new dealership agreement for a combined Case–International dealership to one (but only one) dealer in each conflict area, effectively leaving the other dealer in such area with no access to either Case or IH merchandise and parts.

---

[1]Section 2 of the Dealer Agreement provides in pertinent part:

> 2. The agreement shall cover all those items of agricultural tractors, machines, equipment and attachments, which appear in the Agricultural Equipment Price List issued by [IH], and service parts for such goods. [IH] reserves the right to make additions to and eliminations from such List, including but not limited to reductions resulting from the discontinued production of a line or lines of such tractors, machines, equipment and attachments, without incurring any responsibility to the Dealer. Changes in the List may be announced to the Dealer by the issuance of a revision thereto or by the issuance of a price bulletin.

Case and IH recognized that each terminated dealer would be faced with the prospect of either finding a third manufacturer with which to affiliate or simply going out of the farm machinery business. With this in mind (and, we assume, with the expectation that in most instances the Case dealer would be the one to which the combined Case–International dealership would be offered), Case and IH included in the Purchase Agreement a provision addressing the post-sale status of the former IH dealers.[2] Under this provision Case agreed that with respect to each IH dealer, Case would either offer the former IH dealer a Case–IH dealership agreement (thereby making the IH dealer the sole surviving dealer in the conflict area), or—if the IH dealer were not thus to "make the cut"—offer one alternative among consolidation, relocation, purchase or termination of the IH dealer's operations, *on terms at least as favorable as that Dealer would be entitled to receive upon termination of its Dealer Agreement with IH.* Case also agreed with IH that in the further alternative that Case and an IH dealer could not reach an agreement by the closing date of the Purchase Agreement, Case would offer such IH dealer an interim dealership contract for a period reasonably required for Case and the former IH dealer to reach a mutually acceptable agreement on that dealer's future status.

Delta fell within one of the several hundred conflict areas throughout rural America. Case decided to grant the exclusive Case–International dealership within Delta's area to Scott Truck & Tractor, the pre-existing Case dealer in that locale and a direct competitor of Delta's of long-standing.

---

[2]Section 5.2 of the Purchase Agreement provided:

> 5.2 *Dealer Arrangements.* Purchaser [Case] shall, as soon as practical (sic) after the date hereof, notify the agricultural equipment distributors and dealers of Seller [IH] (the "Dealers") that it intends, within 60 days thereafter, to offer to each of the Dealers, effective as of the Closing Date, either (a) a new distributor or dealer agreement (a "Purchaser Agreement") with respect to the Acquired Business which will be at least as favorable to the Dealer as the current form of distributor or dealer agreement used by Seller and such subsidiaries (a "Seller Agreement"), or (b) an appropriate arrangement for the consolidation, relocation, purchase or termination of the Dealer's operations on terms at least as favorable as such Dealer would be entitled to receive upon termination under a Seller Agreement, and, in the event that agreement has been reached with any Dealer on the Closing Date as to the terms and conditions of such an arrangement, Purchaser will offer such Dealer a Purchaser Agreement for such period as may be reasonably required to attempt to reach such an arrangement. Purchaser shall arrange credit financing for the Dealers and their retail customers which is comparable to the financing currently provided by the Seller and such subsidiaries.

On January 15, 1985, Delta was informed by Case of its decision not to extend Delta a new Case–International dealership contract. Three weeks later Case and Delta met to consider a buy-out of Delta by Case but were unable to arrive at a mutually acceptable arrangement. The following day Delta was informed by letter from Case that it would make IH goods and parts available to Delta for 90 more days only. The letter also stated that negotiations for a termination agreement would continue, but for 30 days only, after which Case would do nothing more than repurchase Delta's whole goods and parts (incidentally, a statutory ri ght of Delta to demand). Case thereafter maintained an account for Delta and provided Delta with IH parts and equipment.

Few if any additional discussions took place between Case and Delta until March 13, 1985 (after the 30 day negotiation period specified by Case had expired), at which time Delta demanded by letter that Case comply with Louisiana law[3] by repurchasing all of Delta's whole goods and parts. Case complied with that demand.

## II

## PROCEEDINGS

Delta filed suit in federal district court against IH and Case, proffering numerous claims arising from the termination of Delta's IH dealership. Delta asserted claims of racketeering,[4] antitrust violations, breach of contract, breach of *stipulation pour autrui*[5] (Louisiana's equivalent of a third party beneficiary contract), breach of fiduciary duty, breach of implied covenants of good faith and fair dealings, fraud, unfair trade practices, and non-compliance with Louisiana's statutory provision covering dealership termination.[6] Delta subsequently amended its complaint to allege that Case succeeded to IH's contractual obligations under the Dealer Agreement, and that Case breached that agreement and was guilty of misrepresentation.

---

[3]*See* LA.REV.STAT.ANN. 51:481–88.

[4]The district court dismissed the RICO claim and we affirmed the dismissal. *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).

[5]*See* LA.CIV.CODE ANN. arts. 1978–82.

[6]*See* LA.REV.STAT.ANN. 51:481–88.

IH and Case moved for summary judgment, and Delta moved for partial summary judgment. The district court partially granted the IH and Case motions for summary judgments, dismissing all of Delta's claims except the one grounded in the theory of third party beneficiary contract. On that one claim the district court ruled that, under section 5.2 of the Purchase Agreement, Case undertook "certain obligations" of IH to its former dealers even though Case did not expressly assume IH's dealership contracts. As such, found the court (albeit without using express terminology of *stipulation pour autrui* or third party beneficiary), Delta could enforce the provisions of section 5.2 directly against Case.

Thereafter Case moved for partial summary judgment on the third party beneficiary issue. Initially, that motion was denied, the district court finding a genuine fact issue in connection with Delta's third party beneficiary claims under Delaware law—the law of choice stipulated by IH and Case in the Purchase Agreement. But after it requested and received additional briefing on the issue, the court recalled its prior ruling and granted Case's motion in part. In the revised ruling, the district court stated that as Case had, under section 5.2(b) of the Purchase Agreement, elected not to offer Delta a new combined Case–International dealership agreement, Case had the option of exploring with Delta any of four alternatives (consolidation, relocation, purchase or termination); and that Case had properly pursued the termination alternative after unsuccessfully pursuing the purchase alternative. The district court held that under the termination alternative Case's only obligation was to offer Delta a settlement on terms at least as favorable as those to which Delta would have been entitled upon termination of its IH Dealer Agreement.

The district court then concluded that the only issue remaining for trial was whether Case had failed to offer Delta an interim agreement as required by the second part of section 5.2(b) of the Purchase Agreement. But in a subsequent pre-trial ruling the district court held that of two remaining issues, the one that invoked Case's obligation to offer Delta an interim agreement had evaporated when Delta made its statutory demand that its inventory of IH equipment and parts be repurchased.

The bench trial commenced less than a month later. Given the district court's prior rulings, Delta's only remaining claim was for the loss of a sale of five cotton pickers to one of its customers.

At the conclusion of Delta's case in chief the district court granted a directed verdict for IH and Case, ruling that inasmuch as Delta had failed to prove that the customer actually would have purchased the cotton pickers, Delta's evidence was insufficient to support a judgment for damages. The district court then dismissed Delta's action with prejudice.

Delta timely appealed the district court's summary disposition of all claims except one and, as to that one claim, appealed the district court's directed verdict. IH and Case cross appealed the district court's holding that Delta could enforce section 5.2 of the Purchase Agreement as a third party beneficiary.

III

ANALYSIS

A. *Summary Judgments Dismissing Delta's Claims*

1. *Standard of Review*

In reviewing a district court's grant of a motion for summary judgment, we examine the record de novo. Our task is to determine, viewing the evidence and all reasonable inferences in the light most favorable to the non-movant, whether the movant has demonstrated that there is no genuine issue of material fact and that the movant was entitled to judgment as a matter of law.[7] We also conduct a plenary review of applicable law; and when, as here, our jurisdiction and that of the district court is based on diversity of citizenship, we afford no deference to the district court's state law determinations.[8]

2. *Delta's Claims Against IH for Breach of Dealer Agreement*

Delta asserts that the Dealer Agreement was unlawfully terminated by IH as a result of the transfer by IH of its entire agricultural equipment division—manufacturing facilities, inventory, trade name and other assets—in globo to Case. Delta complains that IH deliberately contracted with Case in a manner calculated to diminish contractual obligations of IH to Delta under the Dealer Agreement, even though Delta was not a party to the Purchase Agreement.

---

[7] *Pierce v. Hobart Corp.,* 939 F.2d 1305, 1307 (5th Cir.1991).

[8] *Salve Regina College v. Russell,* ⸻ U.S. ⸻, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

The district court found that, although the Dealer Agreement specified several grounds upon which it could be terminated unilaterally by either party or jointly by both parties, that agreement neither expressly provided a fixed term or duration for its performance nor addressed the consequences of a unilateral withdrawal from the agreement by IH, either by ceasing to manufacture agricultural equipment or by disposing entirely of its agricultural equipment business. Relying principally on the provisions of La.Civ.Code Ann. art. 2054, one of several Civil Code articles setting forth rules for interpretation of contracts, the district court first concluded as a matter of law that, absent an express contractual provision for the duration of the Dealer Agreement, that contract should continue for a "reasonable period." The district court then found that the period during which IH continued to manufacture agricultural equipment was the "reasonable period" for purposes of the Dealer Agreement's duration. Stating the obvious—that the Dealer Agreement did not require IH to manufacture agricultural equipment forever—the district court held that when IH ceased manufacturing agricultural equipment, the Dealer Agreement terminated. As such, reasoned the district court, Delta was left with no cause of action against IH for breach of contract when the Dealer Agreement terminated as a result of IH's cessation of manufacturing and selling agricultural equipment pursuant to its sale of that business to Case.

Although we do not quarrel with the determination that IH was not obligated to manufacture and distribute farm equipment forever and thus not obligated to maintain Delta as a dealer forever; and also agree that the reasonable period of IH's obligation to maintain Delta as a dealer was until such time as IH might truly terminate its farm implement business, we disagree with the district court's finding that IH did that. We find, to the contrary, that IH did not terminate its farm implement business but that it sold it lock, stock and barrel, as an ongoing business. In so doing, IH caused the termination of Delta's Dealership Agreement, without cause, before the term of that agreement would otherwise have expired, a classic breach of contract.

Not surprisingly given the number of IH dealers affected by the transaction between IH and Case, this is not the first dispute concerning that transaction to make its way into court. Other IH dealers have sued on claims essentially identical to Delta's in other jurisdictions. As the contracts

considered by the courts in those cases were substantially identical to the Dealer Agreement here, those cases merit discussion.

In *Groseth International, Inc. v. Tenneco, Inc.,*[9] a long-time IH dealer in South Dakota suffered the termination of its dealer status as a result of an? IH/Case transaction and filed, among other claims, a breach of contract action against IH. The trial court granted summary judgment for IH on that claim, holding that section 2 of the dealer agreement[10] gave IH the right to discontinue production of all lines of agricultural equipment without incurring any liability to Groseth. The *Groseth* trial court also held that, even absent section 2 of the dealer agreement, the doctrines of frustration of purpose and commercial impracticability would discharge IH from liability under the contract.

The South Dakota Supreme Court reversed, holding that the trial court had erred in concluding that section 2 of the dealer agreement authorized IH to discontinue completely all agricultural product lines without liability to Groseth. That supreme court held that even though section 2 stated that the price list could always change, there was an underlying assumption that IH would continue to market some group of agricultural products. Therefore, held that court, IH could not cancel the dealer agreement by operation of section 2 as that section did not contemplate IH's discontinuation of manufacturing and distributing agricultural equipment altogether.[11]

The South Dakota Supreme Court also held that, as a matter of law, the doctrine of frustration of purpose did not discharge IH from its duty to perform under the dealer agreement.[12] The court then reversed and remanded the case for a trial on the issue of commercial impracticability, holding that there existed material issues of fact on that question.[13]

---

[9]410 N.W.2d 159 (S.D.1987).

[10]*See supra* note 1.

[11]*Groseth,* 410 N.W.2d at 164.

[12]*Id.* at 167.

[13]*Id.* at 168.

In *Karl Wendt Farm Equip. Co. v. International Harvester Co.,*[14] a former IH dealer in Michigan filed suit in federal district court alleging, inter alia, that IH breached its dealer agreement with Wendt. All other claims were disposed of before trial. At trial, the district court permitted IH's defense of impracticability of performance to go to the jury, and the jury returned a verdict of no cause of action on the contract, adverse to Wendt. The district court denied Wendt's motion for J.N.O.V./new trial but ordered a directed verdict in favor of Wendt on IH's defenses of (1) frustration of purpose, (2) the ability of IH to cease production of all product lines under section 2 of the Dealer Agreement, and (3) an implied term limiting the duration of the contract. Wendt appealed the district court's denial of its motion for J.N.O.V./new t rial, arguing the invalidity of IH's impracticability defense. IH cross-appealed the district court's directed verdict on the viability of IH's other defenses.

The Sixth Circuit held that, under Michigan law, the district court erred in permitting the jury to consider the impracticability defense and that Wendt was entitled to a directed verdict on that issue.[15] The appellate court then addressed IH's assertions on cross-appeal. First, the court agreed with *Groseth* in holding that frustration of purpose was not available as a defense.[16] Again agreeing with *Groseth,* the *Wendt* court also held that section 2 of the dealer agreement did not serve as an alternative means for termination of the contract, especially in light of the existence of specific termination provisions in the contract.[17]

Finally, the *Wendt* court addressed IH's assertion that there is an implied term in every dealership agreement giving the manufacturer the freedom to go out of business, and that such an implied term gave IH a defense to the breach of contract action. IH cited the opinion of the district court in the instant case in arguing that the Sixth Circuit should likewise hold that Wendt's dealer agreement automatically terminated when IH ceased manufacturing agricultural equipment. The Sixth Circuit, criticizing the decision of the district court in the instant case, held that IH had no

[14]931 F.2d 1112 (6th Cir.1991).

[15]*Id.* at 1118.

[16]*Id.* at 1120.

[17]*Id.* at 1121.

defense under such a theory. The *Wendt* court stated that the evidence supported the conclusion that at the time the parties contracted, neither IH nor Wendt anticipated that IH would leave the agricultural equipment business completely. That court continued:

> Implying a term which enables IH to terminate its franchise agreement unilaterally without following the termination conditions of the agreement and without incurring a breach places all the risk on the dealer. Rather, if economic circumstances require that IH leave the market for farm products, it should properly seek to terminate its agreement under the terms of the agreement.... As there is no evidence which suggests that IH sought to terminate its agreement with Wendt by mutual agreement under the terms of the agreement, the district court properly granted a directed verdict for Wendt on this defense.[18]

We are not bound to follow either *Groseth* or *Wendt,* as those cases decided the issues under the laws of South Dakota and Michigan; we are bound here to apply Louisiana law. Furthermore, as the district court in the instant case held that IH had not breached the dealer agreement, it did not address, and hence we do not face, some of the issues decided by *Groseth* and *Wendt*—in particular, the defenses of frustration of purpose and impracticability of performance. Nevertheless, we find the opinions in those two cases helpful in our determination whether IH breached the dealer agreement when it sold its agricultural equipment division to Case without ensuring that Delta would be protected to the full extent of its contractual rights.

The Sixth Circuit in *Wendt* suggested that the district court in the instant case erred in holding that the Dealer Agreement terminated by implication when IH ceased personally to manufacture its agricultural equipment. IH construes that language in *Wendt* to mean that the Dealer Agreement obligated IH to perpetual performance regardless of the circumstances, a conclusion IH argues is unreasonable. IH argues further that, if such is the true meaning of *Wendt,* that opinion is fundamentally flawed because the Sixth Circuit failed to distinguish between IH's decision to leave the agricultural equipment business altogether (which is not addressed in the dealer agreement) and a decision to terminate Delta or any other individual dealer (which is explicitly addressed in the dealer agreement).

We shall not attempt to interpret the true meaning of *Wendt's* analysis of the district court's opinion in the instant case. Our responsibility here is to review the instant decision "from scratch,"

---

[18]*Id.*

not to act as a super appellate court in review of the Sixth Circuit's extra-territorial analysis of our trial court's work. Nevertheless, we conclude that it is IH and the district court, not the Sixth Circuit, which have failed to make a fundamental distinction in this case—the distinction between a true business contraction or partial liquidation on the one hand and the outright sale or transfer of an active trade or business on the other.

In a true business contraction, an entity completely puts to an end one or more of its business pursuits. Such would be the case had IH discontinued its agricultural equipment business so that such business no longer existed; specifically, so that IH farm implements ceased altogether to be manufactured and sold. Clearly, however, that is not what occurred here; IH did not make a business contraction. Instead, it sold in globo its agricultural equipment manufacturing and distributing business, which continued—albeit under the aegis of Case—without so much as skipping the proverbial heart beat.

Under the terms of the Dealer Agreement, Delta could be terminated as a dealer only for cause. The issue whether the "reasonable" duration of the Dealer Agreement—which specified no term—is only as long as IH remained in the business of manufacturing farm equipment, is simply not material to our decision. As drafted, the Dealer Agreement presents a significantly different question, even though it sounds similar: Given no specified term and given the explicit termination provisions in the Dealer Agreement, does IH's transfer of its agricultural implement manufacturing and distributing business, qua business, with the uninterrupted continuation of the manufacture and distribution of IH farm equipment, constitute cause for the manufacturer of such equipment—whether that be IH or its transferee—to terminate the Dealer Agreement as to Delta? Less an issue than a rhetorical question, the answer is a resounding "no!"

The fact remains that, as a direct result of the sale by IH to Case, Delta has been terminated as a dealer—without cause and through no fault of its own. IH cannot avoid its obligations under the dealer agreement by a sale of the business; because IH's sale caused Delta to be terminated as a dealer in violation of the Dealer Agreement, IH has breached that agreement.

Nevertheless, IH argues speciously here as it did in *Groseth* and *Wendt,* that section 2 of the

dealer agreement allows IH to discontinue its agricultural equipment business without liability to its dealers. IH contends that the holdings of *Groseth* and *Wendt*—that section 2 allowed IH to discontinue some, but not all, of its agricult ural equipment lines—are illogical. In support of its argument, IH poses a hypothetical example in which IH phases out a different line of agricultural equipment every six months until only one line, for which there is no market in Delta's area, remains. IH asserts that, as far as Delta is concerned, this scenario does not differ from one in which IH discontinues all of its agricultural equipment. That proposition is so ludicrous it will not be dignified with more than a flat rejection.

IH also argues that if, under *Groseth* and *Wendt,* IH is obligated to continue to manufacture at least one line of agricultural equipment, there is no guidance under the dealer agreement as to which line that must be. IH's arguments so miss the mark that they approach frivolity, failing to recognize (or accept) the distinction between a true termination of the agricultural equipment business (i.e., the cessation of the manufacture of IH agricultural implements by anyone) and the sale of that continuing business to an erstwhile competitor. In the former situation, there would be no more IH agricultural equipment products manufactured by anyone to be distributed to anyone for sale to anyone. In the latter situation, IH products would continue to be manufactured, distributed and sold. It is clearly the latter situation with which we are faced here and which we hold constitutes a breach of the dealer agreement by IH when it results in the loss of dealership by a former dealer who has not breached the Dealer Agreement or otherwise given IH or IH's successor cause to terminate the dealerships.

The key inquiry in this case is better understood if we ask *not* whether IH ceased to manufacture and sell agricultural equipment, but whether IH's agricultural equipment ceased to be manufactured and sold. If only the former had occurred, IH may have been off the hook. But that simply is not what happened, or at least not all that happened. IH farm implements continued to be manufactured and distributed without interruption, so IH remained obligated to Delta. It did not wind down and terminate its manufacture and sale of agricultural equipment; it did not close factories; it did not dispose of land, buildings, machinery, raw materials, inventory, and the like,

merely for scrap or salvage value or in some vast "going out of business" sale. It made a unitary transfer of those and all other elements of its farm implement business.

Even if we assume without deciding that the decision of IH to dispose of its agricultural equipment division was for bona fide business purposes, that disposition still did not produce a termination of such business. Irrespective of the tags and labels that IH and Case placed on the "asset purchase" of that business—whether for tax purposes, labor relations, or other reasons totally irrelevant to this consideration—that transaction was nonetheless a global sale of a going business, qua going business, carrying with it not merely tangible corporeal assets but all intangible, incorporeal attributes of the going business as well—not the least of which was the International Harvester brand name.

We hold that IH is responsible to Delta for all damages it suffered as a result of the loss of its dealership and thus its lawful right to sell and service IH equipment and parts in its designated trade area. IH breached the Dealership Agreement by transferring its ongoing farm implement business to Case in a manner that purported to vest Case with the legal right to terminate Delta's farm implement dealership despite the total absence of cause. In so doing IH layed itself open to respond in damages to Delta for any net losses incurred in the event Case should terminate Delta without cause as defined in the Dealer Agreement and without compensating Delta fully for that breach of the Dealer Agreement. Issues of indemnity or contribution between IH and Case for causing IH thus to respond in damages are not before us; but clearly IH is obligated to Delta for its losses not otherwise compensated for by Case.

3. *Delta's Claims Against Case for Breach of the I.H. Dealer Agreement*

Delta also alleges that as part of the purchase agreement between Case and IH, Case assumed IH's rights and obligations under the dealer agreements. Section 1.2 of the purchase agreement defines the business acquired by Case as IH's "agricultural equipment group [division] which is represented by the Purchased Assets, *including* ... marketing in North America, through *a large dealer organization*." (emphasis added). Delta argues that the only assets relating to the dealer organization are the dealer agreements. As Case acquired those dealer agreements and assumed IH's

obligations under them, Delta's argument continues, Case is bound by the termination provisions of the dealer agreements; and as Delta was terminated as a dealer in a manner inconsistent with its Dealer Agreement, Case has breached that contract.

In further support of its argument that Case assumed IH's obligations under the dealer agreement, Delta cites section 2.1(g) of the purchase agreement, which provides that Case assumed:

> [a]ll liabilities arising out of any claim against [IH] ... brought by any dealer ... in the United States ... which arises out of termination after the date of this Agreement of the contractual relationship of [IH] ... with such dealer ... (whether by the dealer or ... by [IH] ) ... or which otherwise results because of this Agreement or the transactions contemplated by this Agreement.

The district court rejected this argument because a provision in the purchase agreement listed "agreements with dealers" as a type of asset excluded from the purchase. The district court held that section 2.1(g) was an indemnity provision, requiring only that Case indemnify IH against claims brought by dealers. The district court concluded that Case could not and therefore did not breach Delta's Dealer Agreement with IH because Case neither assumed nor acquired any of IH's dealer agreements.

We recognize that the purchase agreement attempted expressly to exclude IH's dealer agreements from the sale of IH's agricultural equipment business. We find as a matter of law, however, that such language was merely an attempt to mask the reality of the transaction. Under section 5.2 of the purchase agreement,[19] Case had the *option* to terminate Delta's status as a dealer of IH agricultural equipment. Such a provision, though, is pregnant with its own obverse: If Case could opt to terminate, it could opt—here, through inaction—*not* to terminate; just another way of saying that Case could elect to retain, and insist upon the dealer's beneficial performance of, any and all dealer agreements. Stated another way, it cannot be that Case could enjoy the power to terminate dealer status, which arose through a Dealer Agreement with IH, without acquiring all of the rights—and obligations—arising under the Dealer Agreement. One of those obligations was not to terminate the dealer without cause. As there is no contention that any of the express conditions justifying termination under the Dealer Agreement were satisfied, Case breached that agreement when

---

[19]*See supra* note 2.

it terminated Delta's status as a dealer.

Our analysis of the nature of IH's sale of its agricultural equipment business to Case leads inescapably to the conclusion that the parties to that transaction acted in concert and attempted to do indirectly what they could not do directly—terminate IH dealers without cause while avoiding or minimizing any financial responsibility and legal liability for such unlawful terminations. IH and Case knew that the transaction would result in a surfeit of dealers, and also knew that they were stuck with IH dealer agreements that did not allow for termination of IH dealers without cause. In an obvious act of damage control, IH and Case crafted the Purchase Agreement so as to disguise the effect of the transaction and avoid the troublesome provisions of the dealer agreements. The Purchase Agreement stated that Case did not assume or acquire the dealer agreements as part of the purchase; at the same time the Purchase Agreement gave Case the power to terminate former IH dealers. IH could not possibly confer on Case a power greater than IH possessed; Case could not obtain the power to terminate an IH dealer in the absence of some sort of contractual relationship between Case and that dealer.

When the Purchase Agreement is viewed in the cold light of reality, it is evident that IH and Case tried to make an end run around the Dealer Agreement between IH and Delta. They failed. We hold that Case is liable for breach of Delta's Dealer Agreement by improper termination. As such, Case and IH are liable *in solido* (jointly and severally) for breach of that Dealer Agreement.

4. *Delta's Third Party Beneficiary Claims Against Case*

As noted earlier, the district court initially found Delta was entitled to seek enforcement of the obligations undertaken by Case to IH's dealers in section 5.2 of the Purchase Agreement between IH and Case, even though Case did not expressly assume the IH Dealership Agreements. When it denied motions by Case and IH for further summary judgment, the district court recognized the existence of a genuine issue of fact: whether Case had complied with its third party obligations undertaken in section 5.2 of the Purchase Agreement. But the court reiterated that, having ruled that Case did not assume the IH Dealership Agreements, Case was not bound by the conditions contained in those agreements concerning the grounds for termination of a dealer. On subsequent

reconsideration, however, the district court—while continuing to maintain the position that Case was not bound by the termination provisions of the Dealer Agreement between IH and Delta—held that section 5.2 of the Purchase Agreement did constitute a third party beneficiary agreement under Delaware law.

In an effort to avoid third party beneficiary liability to Delta, Case insists here as it did in the district court that the express disavowal of third party beneficiary liability set forth in section 18.8 of the Purchase Agreement eschews a third party beneficiary result. The district court's rejection of that contention by Case is correct. The specific provisions of section 5.2 clearly create a third party beneficiary obligation running from Case to IH dealers like Delta, trumping the general language of section 18.8.

Nevertheless, the district court concluded that, as to Delta, Case was only obligated to offer one of the four alternative arrangements listed disjunctively in section 5.2(b): consolidation, relocation, purchase, or termination. The district court found that Case had first explored the third option (purchase) and had negotiated, presumably in good faith, to no avail; after which Case nevertheless chose to exercise the fourth option (termination).

Continuing, the district court recognized that, as Case had pursued termination, it was obligated under section 5.2(b) to see to it that Delta's termination was accomplished "on terms at least as favorable as such dealer would be entitled to receive upon termination under [the Dealer Agreement with IH]." The district court observed that the termination provision requires consideration of § 30 of the Dealer Agreement between IH and Delta which, concluded the district court, "sets out the minimum standard with which Case must comply."

Up to that point we have no disagreement with the district court's analysis. Our disagreement, and the point at which we find that the district court erred, is with its treatment of the § 30 standard as applicable equally to an *unlawful* termination (such as the termination of Delta's dealership arrangement here) and to a *lawful* termination with cause as specified in the Dealer Agreement, e.g., no longer distributing in the dealer's sales area or an active breach by the dealer which remains uncured. Clearly, the limited remedy of the dealer's right to have its inventory equipment and parts

repurchased upon termination applies only to lawful termination, i.e., by mutual consent of IH and Delta, or by Delta unilaterally with or without cause, or by IH unilaterally with specified cause—none of which occurred here. The measure of the obligation of IH—and thus Case—when termination is a breach of the Dealer Agreement is entirely different: full compensatory damages.

As we hold today that the obligation of *IH* under such circumstances is to respond monetarily to Delta in compensatory damages for the losses it experienced as a result of having its Dealership Agreement breached by unlawful termination under section 5.2 of the Purchase Agreement, Case can be responsible to no lesser extent. We and the district court agree that Case expressly obligated itself under section 5.2(b), whether as a Delaware third party beneficiary contract or a Louisiana *stipulation pour autrui,* to treat IH dealers such as Delta no less favorably than IH would be required to treat Delta upon termination of the Dealer Agreement. It is inescapable therefore that Case's obligation to Delta is congruent with IH's obligation to Delta. The fact that, in the Purchase Contract between IH and Case (to which Delta and the other IH dealers were not parties), the four alternatives contemplated by IH and Case as covering for the various types of arrangements that Case might propose are enumerated expressly, is of no legal significance whatsoever as between IH and Delta or Case and Delta. Just as we have held IH and Case contractually obligated in solido to Delta for the losses it suffered when its right to sell and service IH agricultural parts and equipment was terminated by breach of contract, we hold, alternatively, that Case is obligated to Delta as a third party beneficiary to the same extent.

5. *Breach of Duty of Good Faith*

Delta claims that IH breached its duty to act in good faith in its performance under the Dealer Agreement. The district court, having determined that IH did not breach the Dealer Agreement, also found as a matter of law that IH fulfilled its duty to act in good faith under that contract. We disagreed with the former conclusion and now disagree with the latter. As we have noted, IH sold its agricultural equipment business to Case knowing that the transaction would result in the termination of IH dealers without cause. The Purchase Agreement even provided for "comfort letters." For the reasons set forth in more detail in section III.A.3 above, we find that IH deliberately

structured the transaction so as to leave the terminated IH dealers with little or no recourse against either IH or Case. IH argues that by including section 5.2 in the purchase agreement, it fulfilled its duty to act in good faith because that provision was designed to provide for the terminated dealers. On the contrary, that was the very provision which purported to give Case the right to terminate those dealers without cause and, at the same time, immunize IH. We find as a matter of law that IH breached its duty to act in good faith.

6. *Fraud Claim Against IH*

Delta alleges that IH committed fraud by representing to its dealers that it would remain in the agricultural equipment business "forever," at the very time it was negotiating the sale of that business to Case. Such behavior is clearly duplicitous, but to constitute actionable fraud a promise or representation of future actions must be made "with the intention not to perform at the time the promise is made."[20] The district court held that "[b]eyond exhortation and allegation, Delta has produced no evidence which indicates that whenever IH repeated its commitment to the farm equipment business, IH intended otherwise." After reviewing the record, we agree with the district court that Delta has failed to produce evidence of IH's fraudulent intent sufficient to avoid summary judgment on this issue.

7. *Breach of Fiduciary Duty Claim Against IH*

Delta also alleges that IH breached a fiduciary duty in its dealings with Delta. This claim is easily dismissed. Louisiana law does not recognize a fiduciary relationship between a franchisor and a franchisee.[21] Delta cites no Louisiana cases to support its claim. Summary judgment was proper on this issue.

8. *Unfair Trade Practices Claims Against IH and Case*

Delta claims that IH and Case violated the Louisiana Unfair Trade Practices and Consumer

---

[20]*Automatic Coin Enters., Inc. v. Vend–Tronics, Inc.,* 433 So.2d 766, 768 (La.Ct.App. 5th Cir.1983).

[21]*Cason v. Texaco, Inc.,* 621 F.Supp. 1518, 1526 (M.D.La.1985).

Protection Act[22] (the "Act"). The district court dismissed these claims by holding that Delta had failed to show an injury to competition as the required by the Act. The Act provides a cause of action only for "consumers and business competitors."[23] Delta does not qualify as either a consumer or a business competitor vis-a-vis either IH or Case. As Delta's claims do not fall within the ambit of the Act, the district court's summary dismissal of these claims was correct.

B. *Directed Verdict Against Delta*

1. *Standard of review*

In reviewing a directed verdict, we use the same standard used by the district court in making its determination.

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.[24]

2. *Third–Party Beneficiary Claim Against Case*

Delta appeals the district court's directed verdict for Case on the issue whether Case violated its obligation under section 5.2 of the purchase agreement to provide Delta with an interim dealer agreement. The district court held that Delta had failed to prove that it suffered any damages related to that obligation. As we have already discussed, the district court reached this claim only because it rejected Delta's breach of contract claim against Case but held that Delta had enforceable rights as a third-party beneficiary of Case under section 5.2 of the Purchase Agreement, an issue which we have addressed fully above. No additional discussion is required in the context of the district court's directed verdict.

3. *Losses on Missed Sale*

Delta's evidence of lost profits related to a failed sale of five cotton pickers, which Delta

---

[22]LA.REV.STAT.ANN. § 51:1401 *et seq.* (West 1987).

[23]*Morris v. Rental Tools, Inc.,* 435 So.2d 528 (La.Ct.App. 5th Cir.1983).

[24]*1488, Inc. v. Philsec Inv. Corp.,* 939 F.2d 1281, 1286 (5th Cir.1991).

claims it would have consummated if it had been issued an interim agreement, is insufficient. The district court held, and we agree, that Delta failed to show with certainty that the potential purchaser would actually have purchased the equipment, and if so, that he would have purchased it from Delta. As Delta failed to prove loss of profits with the requisite degree of certainty, the district court properly rendered a directed verdict in favor of Case on this claim.

IV.

CONCLUSION

We agree for the most part with the district court's finding of facts. We disagree, however, with the court's conclusions concerning the legal effects of a number of those facts. Concluding that, as a matter of law, both IH and Case breached Delta's dealer agreement, we REVERSE the district court's holding on those issues and hold IH and Case liable *in solido* for Delta's damages resulting from termination of its Dealer Agreement without cause. We hold in the alternative that Case is liable to Delta to the same extent for Case's breach of its third party beneficiary obligation to Delta. We remand the case to the district court for a determination of the quantum of damages which Delta is entitled to recover from IH and Case in solido. We also hold that, as a matter of law, IH breached its duty of good faith in carrying out its dealer agreement with Delta. So we REVERSE the district court's holding on that issue and remand it too for a determination of the quantum of bad faith damages. We AFFIRM the holdings of the district court on all other issues.

SO ORDERED, with IH and Case to bear all costs of this appeal solidarily.